Myers et al., Appellants, *v.* Gibson et al.

Argued March 17, 1931. Before FRAZER, C. J., WALL-
ING, SIMPSON, KEPHART, SCHAFFER and MAXEY, JJ.

*E. C. Higbee,* of *Higbee, Matthews & Llewellyn* and *Scott & Hook,* for appellants.—The general rule undoubtedly is that parol evidence is not admissible to contradict or alter the terms or provisions of a written instrument, because the writing is the most exact as well as the most deliberate and solemn mode of evidencing contracts. Oral evidence for such purpose is generally inadmissible unless a foundation for its introduction is previously laid by competent proof of fraud, accident or mistake: Irvin v. Irvin, 142 Pa. 271; Union Storage Co. v. Speck, 194 Pa. 126; Martin v. Berens, 67 Pa. 459.

A number of rather recent cases are to the effect that an absolute and unconditional promise to pay cannot be repudiated and avoided by an oral contract in substance that there was to be no liability according to the tenor of the contract: First Nat. Bank of Hooversville v. Sagerson, 283 Pa. 406; Fidelity T. & T. Co. v. Garland, 291 Pa. 297; Wolverine Glass Co. v. Miller, 279 Pa. 138; Gianni v. Russell & Co., 281 Pa. 320; Evans v. Edelstein, 276 Pa. 516; First Nat. Bank of Greencastle v. Baer, 277 Pa. 184; Wagner v. Marcus, 288 Pa. 579; Citizens Nat. Bank v. Wisecarver, 300 Pa. 60.

*L. G. Chorpenning* and *H. S. Dumbauld,* for appellees. —Our position briefly stated is that the admissibility of the testimony is governed by the judgment of this court in Gandy v. Weckerly, 220 Pa. 285, and the later cases that have recognized and applied the rule therein stated: Anspach v. Bast, 52 Pa. 356; Fuller v. Law, 207 Pa. 101; Faux v. Fitler, 223 Pa. 568; United States Nat. Bank v. Evans, 296 Pa. 541.

OPINION BY MR. JUSTICE KEPHART, April 20, 1931:

Plaintiffs sold to the defendants all the capital stock of the Myers Paving Company, a paving and road building concern. The terms of the writing over which the controversy arose are as follows. Defendants expressly "agree to pay to the parties of the first part [plaintiffs]

the said purchase price," $38,000. This sum was payable in the following manner: $5,000 in cash, $6,000 on the completion of a certain road, and the remaining $27,000 with interest, in two equal annual payments. The $6,000 was to be secured by an order on a sum due from Morris, one of plaintiffs, on completion of the road mentioned. The other deferred payments were to be secured, first, by a note of the Myers Paving Company, which in turn was to be secured by a pledge of the capital stock sold to defendants, second, by a collateral mortgage on the property and equipment of the paving company, and, third, by an agreement on the part of the paving company to pay to plaintiffs 10% of the amount received from all future road contracts until the debt was paid.

The defense set up was an oral contemporaneous understanding that, with the exception of the $5,000 paid in cash, the purchasers were not to be personally liable for the balance of the purchase price, and that they could, at any time, if they desired, abandon the property and permit plaintiffs to retake it. As the court below stated appellees' position, they (the purchasers) were not to be personally liable under the written contract to make the deferred payments.

This is a plain case of an attempt to defeat and set aside an instrument in its most important part, if not its sole obligation. If there were anything that should have been incorporated in the written contract, it was this oral understanding, since the written contract plainly stated an unconditional and unequivocal personal promise to pay. Indeed, there was no necessity for a written contract if there was no personal liability. When the contract containing the above quoted provision was executed, the $5,000 had been paid, and the five items mentioned above as security, here claimed as the sole source of payment, were each separately executed and delivered to appellants. That is, the $6,000 order, the assignment of capital stock as collateral, the chattel mortgage, and the agreement to pay the 10% on

future contracts, were executed and delivered. The sole matter left in the contract was the personal obligation of the purchasers. The court below held that it could be set aside by the contemporaneous oral inducing promise or understanding, if an attempt were made to enforce personal liability and that such an attempt was constructive fraud. It relied solely on Gandy v. Weckerly, 220 Pa. 285.

Here, the original contract provides for the unqualified payment of a certain sum of money. In support of the oral understanding, defendants were the only witnesses to testify that they were not to do what their contract said they were to do. They were experienced and educated business men, one being a road contractor, another a foundryman, and another a civil engineer. They testified that, notwithstanding the fact that they knew they were signing a contract obligating personal liability, there was an oral understanding that they were not to be held personally responsible. All of the plaintiffs, six in number, with a member of the bar, who represented both parties, testified that no such understanding existed. In addition, when the defendants executed the agreement pledging their stock as collateral security for the debt, they made a distinct acknowledgment of personal liability. The company had given its note as security, and the stock was pledged to secure the payment of this note. In this agreement it was stated: "In the event of a sale of said securities [capital stock] or any of them, the undersigned [defendants] grant to the holder [the plaintiffs] the right to apply the proceeds thereof on account of the said note and interest or on account of any of the liabilities of the undersigned to the holders [these plaintiffs] whether the same be then due or not, provided proper rebate be made for interest, on liabilities not then due. Any surplus from the sale over and above amount of all liabilities of the undersigned to the holder," etc. As far as the record goes, there were no liabilities to these plaintiffs when these

papers were executed except their personal liability on the contract. Furthermore, the defendants' position that they could use the plant and turn it back is certainly unusual, to say the least. Through its operation, they repaid to themselves the $5,000 first paid and many thousands more. In fact, one of the defendants testified "we made plenty of money." It was only when disagreement as to its operations took place among themselves that we find plaintiffs in the position of forcing collection of the balance of their claim. The above recitation of the facts are important in determining the legal question. They show that the case of Gandy v. Weckerly, supra, is not in point. There the facts set up a particular fund from which payment was to be made (see Speier v. Michelson, 303 Pa. 66). The facts here are stronger for appellant than Bank v. Sagerson, 283 Pa. 406, and Bank v. Wisecarver, 300 Pa. 60. The facts show a deliberate attempt to avoid the only obligation of the contract after appellant had performed in every particular permitting property of great value to pass from them. This under the facts cannot be done.

Judgment reversed and is here entered n. o. v. for plaintiffs. Costs to be paid by appellee.