## Colonial Manufacturing Company *v.* Carideo, Appellant.

486

Argued November 12, 1940.

Before CUNNINGHAM, BALD-RIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Filindo B. Masino,* for appellant.

*Hyman Zuckerman,* with him *Hirschwald, Goff & Rubin,* for appellee.

OPINION BY STADTFELD, J., December 18, 1940:

The plaintiff instituted suit in assumpsit to recover the sum of $2,110.66 from the defendant, representing the balance of rentals due under the terms of a written lease agreement between the parties. The plaintiff was lessee of the premises which consisted of a manufacturing plant in Northampton, Pa., from the Easton Trust Company of Easton, Pa., and sub-let the premises to the defendant by the lease on which suit was brought.

The defendant filed an affidavit of defense admitting liability for the rent claim, but relied upon a set-off and counterclaim in the total sum of $2,616.65 as a result of which he claimed a net sum due him by the plaintiff of $505.99. The basis of the defendant's set-off and counterclaim is the averment that the plaintiff, by its authorized agent and the defendant, prior to the execution of the written lease, entered into two oral agreements respecting machinery and equipment on the premises.

As averred by the defendant, the plaintiff agreed, in consideration of the defendant's agreement to assume the balance of $2,216.65 due on an oil burner, boiler and equipment on the demised premises, either to reimburse the defendant for the cost thereof, if plaintiff exercised its option to buy the premises from the owner thereof, or to transfer its title and interest therein to the defendant if it did not exercise such option. In the latter case, defendant, alleged that he had the right, under the agreement, to remove the equipment. (Paragraphs 1, 2 and 3 of set-off and counterclaim). The other oral agreement claimed by the defendant is that plaintiff agreed to permit two cutting tables owned by it to remain on the premises during the term of the lease, and if plaintiff did not exercise its option to purchase the premises, title to the cutting tables would immediately vest in the defendant. (Paragraph 4 of set-off and counterclaim).

Defendant then averred that plaintiff failed to exer-

cise its option to buy the premises from the Easton Trust Company and that subsequent to his abandonment of the premises, he demanded possession of the oil burner, boiler and equipment and the two cutting tables from the Easton Trust Company then in possession of this equipment, which refused to deliver it to him. Defendant then avers demand on the plaintiff to turn over this equipment to the defendant or reimburse him for the balance paid by him on the oil burner, boiler and equipment and to compensate him for the value of the cutting tables, which plaintiff refused to do.

The defendant admitted that he entered into possession of the premises, including the equipment which he claims in the set-off and counterclaim, and that he removed from the premises without taking the equipment with him on or about July 1, 1939, although the lease agreement was for the term ending December 31, 1939. At the time defendant avers he demanded delivery of this equipment, he also avers that the Easton Trust Company was in possession of the premises and the equipment.

The plaintiff filed an amended statement of claim increasing its claim to include certain specified damages to the premises committed by the defendant, but an affidavit of defense raising questions of law to this portion of the claim was sustained by the lower court and is not in issue here.

The plaintiff filed a rule for judgment for want of a sufficient affidavit of defense and an answer to the set-off and counterclaim raising questions of law. On argument before the lower court, the answer raising questions of law was sustained and judgment entered in favor of the plaintiff and against the defendant for the rent admittedly due by the defendant. This appeal has been taken from the order of the lower court entering judgment on the rule.

The paragraphs of the written agreement of lease which was attached to and made a part of the statement

of claim and the execution of which was admitted by the defendant, dealing with the oil burner, boiler and equipment, are as follows: "Par. 15. It is further agreed that the Lessee shall, at his own expense, continue and maintain the boiler insurance now in force and covering the boiler installed in the said premises and will assume the payment of the balance due on the oil burner, boiler and equipment now installed in the said premises which balance, amounting to twenty-two hundred sixteen and 65/100 ($2216.65) Dollars is represented by a series of nineteen (19) promissory notes in the amount of thirty-six & 26/100 ($36.26) Dollars each, payable to the order of Titus and Von Bulow, and a series of nineteen (19) promissory notes, each in the amount of Eighty & 41/100 ($80.41) Dollars, payable to the order of F. H. Ricker Estate, all of which notes are held by the Northampton National Bank of Easton, Pa., and there payable; *the said balance shall be deemed to be, and treated as additional rent, payable hereunder;* in case of default by the Lessee in the payment of said promissory notes when the same shall become due the collection thereof may be enforced by the Lessor in the same manner as rent due and in arrears.

"Par. 16. Lessor shall not be required to furnish water, power or heat, and any charges, costs and expenses in connection therewith shall be borne by the Lessee. Whereas, the existing agreement of lease covering the premises, between the Easton Trust Co. and William Glatzer, hereinbefore referred to and dated the 10th day of July, 1936, grants unto the Party of the Second Part therein named, and his assigns, the option to purchase the premises during the term of the said lease, it is agreed between the parties hereto that should the Lessor herein named exercise its option to purchase the said premises, it will reimburse the Lessee on account on the unpaid balance due on the oil burner, boiler and equipment referred to in the preceding paragraph hereof; and further, will grant unto the Lessee herein

named, during the term of this sub-lease, the first refusal to purchase from it the said property and premises, in the event that the Lessor herein named shall place the same on the market for sale." (Italics supplied).

Appellant contends that the provisions of the lease as set forth supra do not clearly and unequivocally express the true intention of the parties with respect to the title to and ownership of the oil burner, boiler and equipment after payment in full by the defendant of the balance due thereon, and that parol evidence is therefore admissible to explain and identify the subject matter of a writing where there is a latent ambiguity appearing in the contract in question.

The difficulty with the position of the defendant is that the entire subject of the oil burner, boiler and equipment is specifically dealt with in the written agreement of lease entered into on June 24, 1937, subsequent to the date of the alleged oral agreements, and as so dealt with the written provisions are completely at variance with the alleged oral agreement.

Paragraph 15 of the lease specifically provides that the payments to be made by the defendant, lessee, on account of the oil burner, etc., were to be treated as "additional rent", and while paragraph 16 provides that in the event the plaintiff, lessor, exercises its option to purchase the premises it will reimburse the defendant, lessee, for such amounts as may have been paid by him on account of the unpaid balances due on the oil burner, etc., the fact is pleaded that the plaintiff did not exercise its option to purchase the premises.

There is no averment in the set-off and counterclaim that any part of the alleged oral agreements were omitted from the written lease by fraud, accident or mistake, and in the circumstances here presented, such an averment would be unavailing unless it were also averred that the written agreements of the parties, which the alleged oral agreements so flatly contradicted,

were themselves inserted in the written agreements by fraud, accident or mistake.

Under these facts, the principles laid down in the case of *Gianni v. Russell & Co., Inc.*, 281 Pa. 320, 126 A. 791, are clearly applicable. We quote from the opinion in said case, as follows, at pp. 323-325: " 'Where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only evidence of their agreement.' *Martin v. Berens*, 67 Pa. 459, 463; *Irvin v. Irvin*, 142 Pa. 271, 287. 'All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract ...... and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence': *Union Storage Co. v. Speck*, 194 Pa. 126, 133; *Vito v. Birkel*, 209 Pa. 206, 208.

"The writing must be the entire contract between the parties if parol evidence is to be excluded and to determine whether it is or not the writing will be looked at and, if it appears to be a contract complete within itself 'couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, were reduced to writing': *Seitz v. Brewers' Refrigerating Machine Co.*, 141 U. S. 510, 517.

"When does the oral agreement come within the field embraced by the written one? This can be answered by comparing the two, and determining whether parties, situated as were the ones to the contract, would naturally and normally include the one in the other if it were made. If they relate to the same subject matter and are so interrelated that both would be executed at the same time, and in the same contract, the scope of

the subsidiary agreement must be taken to be covered by the writing. *This question must be determined by the court.* (Italics supplied) ......

."In cases of this kind, where the cause of action rests entirely on an alleged oral understanding concerning a subject which is dealt with in a written contract, it is presumed that the writing was intended to set forth the entire agreement as to that particular subject. 'In deciding upon this intent (as to whether a certain subject was intended to be embodied by the writing), the chief and most satisfactory index ...... is found in the circumstances whether or not the *particular element of the alleged extrinsic negotiation is dealt with at all* in the writing. If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation': Wigmore on Evidence (2d ed.) vol. 5, page 309 ......

"We have stated on several occasions recently that we propose to stand for the integrity of written contracts: *Wolverine Glass Co. v. Miller*, 279 Pa. 138, 146; *Evans v. Edelstein*, 276 Pa. 516; *Neville v. Kretzschmar*, 271 Pa. 222. We reiterate our position in this regard."

The Supreme Court has never departed from the rule laid down in said case. See *First National Bank of Hooversville v. Sagerson et al.*, 283 Pa. 406, 129 A. 333; *Myers et al. v. Gibson et al.*, 304 Pa. 249, 155 A. 563; *Madison-Kipp Corp. v. Price B. Corp.*, 311 Pa. 22, 166 A. 377; *Warner Co. v. North City Trust Co.*, 311 Pa. 1, 166 A. 230; *Lycoming Trust Co., to use, v. Smithgall*, 334 Pa. 4, 5 A. 2d 152.

Even without the consideration of the effect of the parol evidence rule, the set-off and counterclaim do not state a cause of action. We quote from the opinion of the court below: "The defendant alleges that plaintiff agreed to transfer title to the oil burner and equipment in the premises sub-let to him if the plaintiff did not

exercise its option to purchase the premises. The pleading however, shows that the defendant was in possession of the premises from June 24, 1937 until May 31, 1939, *when. it abandoned the premises.* During that entire period the defendant was in possession of the oil burner and equipment, including the cutting tables, and if it had any lawful right to its title or possession it could exercise that right, and there is no pleading that plaintiff did anything to interfere with the defendant's assertion of such right. What the defendant pleads is that after he had abandoned the premises, the Easton Trust Company, the owner of the premises, refused to permit him to take out the oil burner and equipment, including the cutting tables. This shows no cause of action against the plaintiff." (Italics supplied).

We find no reason warranting a reversal of the judgment.

Judgment affirmed.