Pennsylvania Liquor Control Board, Appellant, *v.* Publicker Commercial Alcohol Company, Appellant.

556

Argued May 25, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

*Horace A. Segelbaum,* Deputy Attorney General, with him *James H. Duff,* Attorney General, for appellant No. 17, appellee No. 18.

*Douglass D. Storey,* with him *J. Maurice Gray* and *Storey & Bailey,* for appellant No. 18, appellee No. 17.

OPINION BY MR. JUSTICE DREW, June 30, 1943:

These cross appeals arose out of a suit in assumpsit brought by Pennsylvania Liquor Control Board against Publicker Commercial Alcohol Company, a Corporation of Pennsylvania, to recover license fees claimed to be due under section 15 of the Act of February 19, 1926, P.L. 16, as re-enacted and last amended by section 7 of

the Act of June 16, 1937, P.L. 1811,[1] for 15,791,596.1 proof gallons of ethyl alcohol manufactured or distilled by defendant company during the calendar year 1941, but not denatured [2] in this Commonwealth.

To the Board's statement of claim, defendant filed its affidavit of defense, wherein it admitted the production of the gallonage and the fact that the alcohol was not denatured in Pennsylvania, as averred by the Board, but denied any liability for the license fees claimed, on the ground that all the alcohol was distilled for and delivered to the federal government for non-beverage uses, and also that of the total gallonage in controversy, 13,-976,009.1 proof gallons were produced from molasses owned by the national government. The Board moved for judgment for want of a sufficient affidavit of defense, and, after argument, the learned court below sustained the sufficiency of the affidavit and dismissed the motion as to the alcohol distilled from government-owned molasses; but as to the remaining gallonage manufactured for the government from defendant's own raw material, that court held the affidavit insufficient and entered judgment for the Board for the license fees due thereon, together with interest from January 1, 1942. Both the Board and defendant company appealed to this Court, and since the appeals were argued together, they will be disposed of in one opinion.

---

[1] This section of the statute provides: ". . . The annual fee for every license issued to a distillery shall be twenty-five hundred dollars $2,500), per annum, if the annual production is five hundred thousand proof gallons or less, and an additional fee of one hundred dollars ($100) for each one hundred thousand (100,000) proof gallons, or fraction thereof, in excess of five hundred thousand (500,000) proof gallons, *but for the purpose of determining the amount of the fee payable by a distillery, the annual production of alcohol that is denatured during the license year in Pennsylvania, and not elsewhere, shall be excluded* . . ." (Italics added).

[2] Section 2 (o) of the amending Act, supra, states: "The term 'denatured alcohol' shall mean and include all alcohol or alcoholic liquid, or any compound thereof, which, by admixture of such denaturing material or materials, is rendered unfit for use as a beverage."

We have two questions to determine: first, did the legislature intend, by the Act of 1926, supra, as re-enacted and amended, to subject a distillery [3] to license fees on account of alcohol manufactured in this Commonwealth and sold, without being denatured in Pennsylvania, to the United States government for non-beverage use; and, second, if such was the intent of the legislature, is the statute invalid, as applied to the alcohol manufactured from government-owned molasses, as an unlawful attempt to tax the federal government or the means employed by it in the proper exercise of its powers?

In deciding the first question, we must keep in mind section 1 of this statute which provides: "That this entire act is an exercise of the police power of this Commonwealth for the protection of the public welfare, health, peace, safety and morals of the people of this Commonwealth, *and all of its provisions shall be liberally construed for the accomplishment of these purposes.*" (Italics added.) And we must not overlook the well-established principle, now section 51 of the Statutory Construction Act of May 28, 1937, P.L. 1019, that "Every law shall be construed, if possible, to give effect to all its provisions. When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit"; or the principle expressed in section 54 of the Construction Act that "Exceptions expressed in a law shall be construed to exclude all others."

Section 15 of the Act before us provides that a manufacturer of alcohol shall pay license fees measured by the total amount of his product with the exception of such portion thereof as is denatured in Pennsylvania. In the instant case, therefore, since the entire gallonage produced was ethyl alcohol, which could be used for

---

[3] Defendant company is a "distillery" as statutorily defined (section 2(i) of the amending Act of 1937, supra).

beverage purposes, and it was not denatured in Pennsylvania, it comes within the provisions of this section and the prescribed fees must be paid. This is true although some of the alcohol was manufactured from government-owned molasses and some from raw material of defendant company. It is contended, however, that a proper reading of the Act will make it appear that it was the intention of the legislature to regulate only that alcohol which could become available for beverage use in this Commonwealth, whether denatured here or not. It is asserted that there is no possibility that the alcohol manufactured for the government would be used for beverage purposes in Pennsylvania and for that reason it was not subject to license fees. There is no merit in this contention. The Act in plain and unambiguous language proves it, because there it appears that *all* the alcohol manufactured, with the single exception of alcohol denatured in Pennsylvania "and not elsewhere", shall determine the amount of the license fees. There is no other exception whatsoever in relief of the manufacturer. We are certain it was the intention of the legislature to treat as potentially availale for beverage uses all ethyl alcohol manufactured and not denatured in Pennsylvania, and to use the amount thereof as the measure of the license fee which the manufacturer was to pay.

Answering the second question raised, we think it clear that the statute, in subjecting defendant company to the payment of fees on account of alcohol manufactured from raw material of the government, does not impose a tax on the government or the means employed by it in the exercise of its powers. No tax is imposed upon the federal government or its property. Here no tax is imposed on any one. This is definitely not a tax statute. Section 1, supra, clearly says "That this entire act is an exercise of the police power of this Commonwealth . . ." The "license fee" is charged for the special privilege or authority of manufacturing alcohol, and is

a regulatory fee, not a tax. A license fee is a charge which is imposed by the sovereign, in the exercise of its police power, upon a person within its jurisdiction for the privilege of performing certain acts and which has for its purpose the defraying of the expense of the regulation of such acts for the benefit of the general public; it is not the equivalent of or in lieu of an excise or a property tax, which is levied by virtue of the government's taxing power solely for the purpose of raising revenue: *New York Brooklyn City R. R. Co. v. New York*, 199 U. S. 48; *Reser v. Umatilla County*, 48 Ore. 326, 329, 86 Pac. 595, 597; *Conard v. State*, 41 Del. 107, 16 A. (2d) 121; 37 C.J. 167-170. That the fee imposed is not a tax is strengthened by considering the Act of December 5, 1933, (Special Session), P.L. 38, as amended, known as "The Spirituous and Vinous Liquor Tax Law", which imposes taxes upon all engaged in the manufacture, sale or use of alcohol usable for beverage purposes, and certain spirituous and vinous liquors. This Act is definitely a revenue measure. For instance, it places a tax on distilled spirits of one dollar per proof gallon. In the Act being considered by us, the "license fee" is approximately one-tenth of one per cent per gallon. A mere comparison of these charges indicates clearly which act the legislature intended should be for revenue. It is impossible to believe both acts were inteneded for the same purpose.

While the levy contested in the instant case is not a tax imposed to raise revenue, under the taxing power of the State, but a license fee for regulatory purposes, under the police power, the same constitutional principles are applicable in determining whether the measure constitutes a prohibited interference with the functions of the federal government. If a state excise or franchise tax having certain characteristics and effects is not unconstitutional, neither is a license fee causing the same result with respect to the national government. We are convinced that the Commonwealth may impose license fees upon a Pennsylvania distiller, under its

police power, for the grant of the special privilege to engage in the manufacture of ethyl alcohol within its borders, that such fees may be measured by the amount of such alcohol distilled, including some manufactured for the government from its own raw material, which itself may be immune from a property tax, and that such charges transgress no federal constitutional prohibition. In *New York State v. Roberts,* 171 U. S. 658, it was held that a state franchise tax could be measured by a base which included income produced in part from the sale of imports in the original packages. There it was said (p. 664) : "Here no tax is sought to be imposed directly on imported articles or on their sale. This is a tax imposed on the business of a corporation, consisting in the storage and distribution of various kinds of goods, some products of their own manufacture and some imported articles. From the very nature of the tax, being laid as a tax upon the franchise of doing business as a corporation, it cannot be affected in any way by the character of the property in which its capital stock is invested."

The constitutional immunity from state laws or regulations affecting the performance of governmental functions by federal officers and agencies does not extend to defendant company, a private Pennsylvania corporation, who merely contracted for a profit to furnish alcohol to the government, or to render services to the government in converting its raw material into alcohol. This is so even though as a result of an increase in the price of the alcohol its ultimate effect may be to impose an increased economic burden on the federal government: *Alabama v. King & Boozer,* 314 U. S. 1; *Penn Dairies, Inc., v. Milk Control Comm. of Pennsylvania,* 318 U. S. 261.

For the foregoing reasons, the court below should have entered judgment for Pennsylvania Liquor Control Board for the full amount of its claim.

The judgment is increased from $1,900.96 to $15,800.00, with interest from January 1, 1942, and as so modified is affirmed.