Black et ux. *v.* Cinquegrani et ux., Appellants.

158.

[black redaction bars]

Argued April 15, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Abraham Pervin*, for appellants.

*Zeno Fritz*, with him *F. J. Zappala*, for appellees.

OPINION BY DITHRICH, J., July 23, 1948:

Appellants were the owners of a building at 3057 Preble Avenue, Pittsburgh, where they conducted a restaurant for which they had a restaurant liquor license for the license year 1944-45. On March 7, 1945, they entered into a written agreement with John H. Black, husband appellee, the material part of which was that "the said parties agree to sell and convey to the said party of the second part, *restaurant liquor license* TR9943, and the restaurant with all the furniture and fixtures" and the real estate situate at 3057 Preble Avenue. (Emphasis added.) The consideration was $7800.

Prior to March 7, 1945, the date of the agreement of sale, James V. Cinquegrani, the husband appellant, had applied to the Pennsylvania Liquor Control Board for a renewal of the liquor license for the premises and had deposited with the Board the requisite $600 renewal fee. The Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, § 409, as amended, 47 PS § 744-409(b) provides in part that all applications for

renewal of licenses shall be filed at least sixty days before the expiration date of same, which in this case was April 30, 1945. The transfer of the license was approved April 11, 1945, and plaintiffs were required by the Liquor Control Board to deposit the sum of $600 as a renewal fee for the license year beginning May 1, 1945, and ending April 30, 1946. The Board then refunded the $600 renewal fee which Cinquegrani had deposited with it. Plaintiffs, contending that the consideration of $7800 which they had deposited in escrow pending the approval by the Liquor Control Board of the transfer of the license covered the license fee as well as the license, demanded of defendants the sum of $600 and, upon their refusal to turn it over to them, they brought this action in assumpsit. The jury found for plaintiffs and from the refusal of their motions for judgment n. o. v. and a new trial defendants have brought this appeal.

Plaintiffs' pleadings consist of a statement of claim, an amended statement of claim, and an amendment to the amended statement of claim. The original statement was amended by attaching thereto a copy of the written escrow agreement and by adding thereto that "At the time the aforesaid written agreement was entered into . . . it was orally understood and agreed by and between the parties . . . that the defendant . . . was to and did sell, assign and transfer any and all rights that he had, or was to have in and to the said renewal of the said liquor license including the said sum of Six Hundred ($600.00) Dollars and that the plaintiffs were to pay nothing in addition to the said sum of $7,800.00 . . ."

After defendants had filed separate answers to the amended statement of claim (the wife defendant denying that she had anything to do with respect to the transfer of the liquor license which was in the name of her husband alone), plaintiffs filed an amendment to their amended statement in which they averred that the understanding of the parties in respect of the li-

cense renewal fee was "omitted from the . . . written agreement by reason of the oversight, inadvertence and mistake of the parties . . . and their respective counsel . . ."

At the trial they offered no evidence of mistake. They did, however, offer, and it was admitted over objection by defendants, parol evidence "to identify and describe [the] subject-matter of the contract," or, in the language of the learned trial judge "to explain . . . what they meant by the transfer of the liquor license" or "what the *intention* of the parties was at the time the agreement was drawn up." (Emphasis added.)

The evidence was clearly inadmissible. To begin with, defendants did not have a liquor license for the year 1945-46. The license they had, and that in the name of the husband alone, expired April 30, 1945. All they could possibly transfer, and the only transfer the Liquor Control Board could or did approve, was the transfer of the license for the remainder of the license year 1944-45. Section 408(b) of the Liquor Control Act provides in part that "Whenever any license is transferred, no license or other fees shall be required from the person to whom such transfer is made for the balance of the then current license year." That section cannot be construed to mean other than that whenever any license is transferred the word "license" means license for the balance of the current license year. That, undoubtedly, was why the Board returned to the transferor the renewal fee he had deposited with his application for the renewal of his license and sent to the transferees an application for the renewal of the license which had been transferred to them. Without making any demand on defendants or even saying anything to them about it, plaintiffs filled out the renewal application and forwarded it to the Board with the $600 renewal fee. If, as they now say, it was the understanding of the parties that Cinquegrani "was to and did sell, assign and trans-

fer any and all rights that he had" to the $600 he had deposited with the Liquor Control Board, it is strange that they would make an additional deposit of the same amount without first taking the matter up with Cinquegrani. But it was not until considerably later, after they had learned that the $600 deposit had been returned to Cinquegrani, that they raised any question about it.

The escrow agreement recited that "It is definitely understood and agreed . . . that the said sum of Seven Thousand Eight Hundred and No/100 ($7,800.00) Dollars includes, as well as the license, premises at the aforementioned address . . ." If the parties had intended it to include the license fee "as well as the license" they could, and no doubt would, have said so. That there is a difference between the two is abundantly clear. "The terms 'license' and 'license fee' have definite and distinct meanings . . .": 53 C. J. S., Licenses, §3a. See also *Pennsylvania Liquor Control Board v. Publicker Commercial Alcohol Co.*, 347 Pa. 555, 32 A. 2d 914.

Appellees contend that the provisions of the sale agreement, as set forth supra, do not clearly express the intention of the parties with respect to the liquor license, and that parol evidence is therefore admissible to identify the subject matter and "for the purpose of removing any ambiguity" appearing in the contract. The chief difficulty with appellees' contention is that in their statement of claim, as finally amended, they averred that the terms of the oral agreement were omitted from the written agreement by reason of "oversight, inadvertence and mistake." In *Hambleton v. Hartman*, 160 Pa. Superior Ct. 447, 451, 51 A. 2d 511, we said: "The bald averment of the omission on such ground is but a conclusion of law and is not enough. Where fraud or accident or mistake is set up in a pleading as a ground for relief, the facts which constitute it

must be averred." Not only did appellees fail to aver any facts which constituted the alleged mistake, but at the trial they abandoned that theory altogether and shifted their position to that of a latent ambiguity. Their position is wholly untenable.

The definite understanding and agreement of the parties that the $7800 included the premises at 3057 Preble Avenue, as well as the license, was specifically set forth in the agreement between the parties. No mention was made of the license fee and, as we have previously pointed out, there is a distinct and decided difference between the two.

"Every writing must be interpreted according to its subject matter; and if there is a subject matter in existence that satisfies all the terms of the writing, parol evidence cannot be admitted to show something else was intended": Henry, Pa. Trial Evidence, 3d ed., page 524, §357.

"Parol or extrinsic evidence of the intention of the parties may be received to clear up an ambiguity by reason of which such intention is not definitely expressed; but, where the writing is free from ambiguity, parol evidence is not admissible to show that the real intention of a party was other than that clearly expressed by the writing": 32 C. J. S., Evidence, §960.

Where a contract appears to be complete within itself, as this one does, it is conclusively presumed that it represents the entire engagement of the parties. *Lester v. Century Ind. Co.*, 356 Pa. 15, 50 A. 2d 678; *Colonial Mfg. Co. v. Carideo*, 142 Pa. Superior Ct. 485, 16 A. 2d 731.

To uphold the contention of appellees would be to do violence to the rule laid down in *Gianni v. R. Russell & Co., Inc.*, 281 Pa. 320, 126 A. 791. In that case the Supreme Court said, page 325: "We have stated on several occasions recently that we propose to stand for the integrity of written contracts: Wolverine Glass Co. v. Miller, 279 Pa. 138, 146; Evans v. Edelstein, 276 Pa.

516; Neville v. Kretzschmar, 271 Pa. 222. We reiterate our position in this regard." And as we pointed out in *Colonial Mfg. Co. v. Carideo,* supra, page 492: "The Supreme Court has never departed from the rule laid down in . . . [that] case."

The judgment of the court below is reversed and is here entered for defendants.