**Busick v. Lafferty**

*William H. Eastburn, III,* for plaintiffs.
*Edward J. McGlinchey,* for defendants.

BORTNER, *J.,* October 24, 1978—As the pleadings and exhibits in this case reveal:

On May 27, 1976, Joseph O. Busik (in favor of himself or his nominee) entered into an agreement of sale with the Estate of Arthur C. Ansley, deceased, for a piece of ground consisting of approximately 38 acres in Solebury Township,[1] Bucks County, Pa., for a price or consideration of $182,500. The parties to the agreement employed, for its form, the standard long form Real Estate Agreement No. 898-5. The only remarkable modification to the agreement was a handwritten clause inserted therein as a supplement to paragraph three[2] thereof (and which was initialed by the parties). This inserted clause reads as follows: "Seller agrees to pay an increase in tax liability prior to date of sale arising out of Act 515."

Settlement obtained on July 14, 1976, and proceeded to completion without incident. At settle-

---

1. The record demonstrates this property was indeed the subject of a covenant entered into between the County of Bucks and Arthur C. Ansley on December 8, 1972, and which is recorded at Deed Book 2064, p. 431 and at Deed Book 2064, p. 456 and in the office of the Clerk of Courts at Miscellaneous Docket 1826 and 1831 of 1972, pursuant to the provisions of the Act of January 13, 1966, P.L. (1965) 1292, 16 P.S. §11941 et seq.

2. "The premises are to be conveyed free and clear of all leases, encumbrances and easements, excepting, however, the following: Mortgage encumbrances as above mentioned, existing building restriction ordinances, easements, roads, privileges or rights of service companies and any other restrictions or conditions of record if any . . ."

ment, the sum of $3,000 was escrowed "for Act 515 Taxes." Title was taken in the names of J. Kevan Busik and Linda F. Busik h/w (these obviously being the nominees of Joseph Busik).

On February 11, 1977, plaintiffs, J. Kevan Busik and Linda F. Busik, instituted suit against James A. Lafferty and H. Frank Kulp, co-Executors of the Estate of Arthur C. Ansley, deceased, and James A. Lafferty, individually (as escrow agent).

The action was brought in assumpsit and claimed of the estate and the escrow the sum of $2,317.05 together with interest from August 1, 1976, representing that sum "determined" by plaintiffs as the "exact amount of taxes and penalties apportionable to ownership of the property to the date of settlement arising out of any Act 515 covenant breach by plaintiffs." The said sum was claimed to be due pursuant to the agreement of sale (and agreement at settlement).

Defendants' answer denied liability, averring that the clause in the agreement became operative only in the event the sale of the land itself constituted a breach of the 515 covenant. In new matter, defendants further averred that the sale, as a matter of fact and law, did not result in a breach of the covenant of Act 515 so that there was no increase in the liability (from a retro-assessment) and that as a matter of fact, tax liability decreased as the result of a reduced assessment after settlement.

Plaintiffs' reply to new matter denied that the agreement "was based or contingent upon actual breach, but rather was contingent only upon accurate assessment of taxes and penalties should a breach ever occur *and regardless of whether or not one did*." (Emphasis supplied.)

Defendants' motion for summary judgment was granted on the basis of the pleadings and affidavits

of both parties. Our order granting judgment to the defendants embraced our overall conclusion that there was no genuine issue as to any material fact; that the agreement of sale was an integrated contract, the meaning of which was clear on its face, without latent ambiguity, and immune from derogation by any end run around the Parol Evidence Rule. As the result of our reading of the disputed clause, we concluded plaintiffs had stated no cause of action and accordingly gave judgment to defendants.

Plaintiffs have appealed. Hence this opinion.

In their reply to defendants' new matter, plaintiff purchasers take the hard position that "Exhibit A" (the agreement of sale) "speaks for itself." Plaintiffs do not contend that the "agreement at settlement" represented any modification of the disputed clause, but on the contrary, that the disputed clause was *acted* upon by all parties in a manner which was consistent with the meaning now ascribed to it by plaintiffs. Defendants' answer denied however that defendants gave it that meaning or acted in accordance with that meaning. Rather, defendants assert that the actions taken by them were and are consistent with the plain meaning of the words themselves.

Since the conduct of the parties is arguably consistent with their respective views of the disputed clause, that conduct provides little clue as to its meaning. Instead, we must consider the plain meaning of the disputed clause, as supplied by the statute upon which it is predicated.

The pertinent sections of the act read as follows:

"§2. All counties of the first, second, second A, third or fourth class are hereby authorized to enter into covenants with owners of land designated as

farm, forest, water supply, or open space land on an adopted municipal, county or regional plan for the purpose of preserving the land as open space. Such covenants and extensions thereof shall take effect upon recording in the office of recorder of deeds. The land owner may voluntarily covenant for himself and his successors and assigns in right, title and interest that the land will remain in open space use as designated on the plan for a period of ten years commencing with the date of the covenant. The county shall covenant that the real property tax assessment, for a period of ten years commencing with the date of the covenant, will reflect the fair market value of the land as restricted by the covenant. The board to which assessment appeals are taken shall take into consideration the covenant's restriction upon the land in fixing the assessment." 16 P.S. §11943.

"§6. If the land owner, his successors or assigns, while the covenant is in effect, alters the use of the land to any use other than that designated in the covenant, such alteration shall constitute a breach of the covenant and the land owner at the time of said breach, shall pay to the county, as liquidated damages, the difference between the real property taxes paid and the taxes which would have been payable absent the covenant, plus compound interest at the rate of five percent per year from the date of entering the covenant to the date of its breach or from a date five years prior to the date of its breach whichever period is shorter. Such liquidated damages shall be a lien upon the property collectible in the manner provided by law for the collection of unpaid real property taxes. The acquisition by lease, purchase or eminent domain, and the use of rights of way or underground storage rights

in such land by a public utility or other body entitled to exercise the power of eminent domain shall not constitute an alteration of use or a breach of covenant." 16 P.S. §11946.

This much is clear from the record. The property was the subject of a covenant entered into between the decedent Arthur C. Ansley and the County of Bucks pursuant to Act 515 wherein he agreed to keep the land undeveloped in consideration of its assessment as undeveloped land.

This much is now also clear. As written, the *purpose* of the disputed clause is, we say, *related* to two logical possibilities: one, the fear that the instant conveyance, itself constituted a breach of the covenant[3] in which case buyers justifiably might ask the sellers to assume that proportion of the retro-assessed taxes representing the sellers' period of tenure; or two, that a decision by the buyer, one day in the future, to breach the covenant, would result in retro-assessment of taxes in which case, the seller, having sold the land at a price it commands as development land (as contrasted to its value as a farmland) should equitably share that portion of the retro-assessed taxes represented by his period of tenure.

If plaintiff were contending for the latter possibility (i.e., buyer breached the covenant four years after settlement and now sues seller for portion of retro-assessed taxes) and defendants were contending for the former possibility, summary judgment could not have been given to either party for

---

3. In his supporting affidavit, defendant Lafferty swears this was the reason given by the plaintiffs for their insistence on the insertion of the disputed clause, of which, they are, at least by implication, the author.

the obvious reason that the disputed clause is arguably ambiguous as to the limitations, if any, there are on the *times when* the liability in this case shall arise.[4] That parol evidence would be admissible to clear up that ambiguity is beyond debate and we need only cite a hornbook for that proposition. See, for example, Boardman-Smith Corp. v. Sherman, 176 Pa. Superior Ct. 302, 107 A. 2d 202 (1954).

Equally *un*ambiguous is the meaning of the clause (supplied by the statute) that liability in any event "arises out of Act 515" when the covenant is *breached*.

Neither of the parties argues that parol evidence is necessary to supply meaning to either a patent or latent ambiguity in the language of the disputed clause. Both insist that the meaning which they ascribe to the language of the clause is plain and manifest.

Whether or not defendants are correct in their version of the meaning which they ascribe to the disputed clause, plaintiffs' cause of action is itself based on the meaning which *they* give to the clause. It therefore becomes necessary to examine it in some detail. In this connection (in their affidavit) plaintiffs argue two things: One, the moneys escrowed were intended as a *credit* to the buyers (representing seller's proportional share of retro-assessed taxes); and two, were escrowed only for so long as it takes to *compute* that share which (remarkably) became due at settlement *whether or*

---

4. This opinion is not intended to do violence to plaintiffs' arguable right to bring an action at a later date to recover the seller's proportional share of retro-assessed taxes in the event of a breach by buyer of the 515 covenant. We express no opinion on the merits of such an action, should it be brought.

*not there was ever a breach, whether or not there ever will be a breach* by the buyer.

All this, plaintiffs claim as "arising from Act 515." We do not understand how the plaintiffs are able to stretch a *liability* which by the very plain terms of Act 515 is made to arise only by a *breach* of an Act 515 covenant into a liability which arises *whether or not* there is a breach of an Act 515 covenant.

The plain meaning[5] of the words of the disputed clause is that seller's tax liability will arise from a *breach* of the 515 covenant executed originally with the blessing of the statute.

Even if plaintiffs were to offer, this late date, to give parol evidence to supply the meaning for which they contend, the offer must be refused: Black v. Cinquegrani, 163 Pa. Superior Ct. 157, 60 A. 2d 898 (1948).

Counsel certainly know or should know that where an agreement is reduced to writing without fraud or mutual mistake, the writing is not only the best, but the only evidence of the agreement: Seaboard Radio Broadcasting Corp. v. Yassky, 176 Pa. Superior Ct. 453, 107 A. 2d 618 (1954). Any parol evidence offered by defendants would alter the con-

---

5. Every writing must be interpreted according to its subject matter; and if there is a subject matter in existence that satisfied all the terms of the writing, parol evidence cannot be admitted to show something else was intended: 1 Henry, Pa. Trial Evid. 524, §357 (3d ed.). Act 515 certainly satisfies all the terms of the disputed clause. It is true, of course, that language apparently clear and unambiguous on its face may be, in fact, latently ambiguous. Words such as "alimony" for instance, do not always mean alimony in the law, they sometimes also mean child support. See, for example, Kohn v. Kohn, 242 Pa. Superior Ct. 435, 364 A. 2d 349 (1976). We know of no case, however, which has held that "breach" means "no breach."

tract or deed and in the absence of any allegation of fraud, accident or mistake would violate the parol evidence rule. Where the terms of a contract are put in writing, complete within itself, and couched in such terms as to disclose a complete legal obligation, without any uncertainty as to the object or extent of the engagement, it is conclusively presumed to represent the whole contract of the parties to the extent and manner of their undertaking: National Realty Appraisal Co. v. Art Club of Philadelphia, 129 Pa. Superior Ct. 99, 105, 195 Atl. 139 (1937).

It seems to us that the terms used in the contract are clear and unambiguous, and that which is plainly expressed cannot be overcome or modified by saying that some unexpressed intention has been omitted.

Our decision to give judgment to the defendants rests therefore on our conclusion that the disputed clause does not, nor can it have, by any rational reading, the meaning ascribed to it by the plaintiffs. That meaning runs counter to the clearly efficient meaning supplied to the clause by Act 515, to which, by deliberate design, the parties made reference in the studied choice of words they employed to flesh the handwritten sentence they caused to be inserted in the agreement of sale. Our holding, makes somewhat gratuitous, our remark in passing, that the disputed clause expresses a clear intention to impose on seller a liability to pay retro-assessed taxes to the taxing authority and not ever to the plaintiffs. The escrow of the funds guarantees *this* and makes a credit to the buyer unnecessary.