Gunn Pontiac, Inc., Appellant, *v.* Pittsburgh.

Argued April 16, 1953.   Before RHODES, P. J., HIRT, RENO, ROSS, GUNTHER and WRIGHT, JJ.

*C. Francis Fisher,* with him *James R. Fitzgerald* and *Brenlove & Fisher,* for appellant.

*Robert Engel,* Assistant City Solicitor, with him *Anne X. Alpern,* City Solicitor, for appellee.

OPINION BY ROSS, J., September 29, 1953:

This is an appeal by Gunn Pontiac, Inc., a Pennsylvania corporation, from an order dismissing its appeal from an assessment for mercantile taxes imposed by the City of Pittsburgh on its gross volume of sales of motor vehicles under installment sales contracts for the year 1951.

The Act of June 25, 1947, P. L. 1145, 53 PS sec. 2015.1, gave authority to cities of the second class A and certain other political subdivisions to levy such taxes on persons, transactions, occupations, privileges, subjects and personal property within their limits as they should determine, but not on a privilege, transaction, subject, occupation or personal property "which is now or does hereafter become subject to a State tax or license fee . . ." The constitutionality of this Act was upheld in *English v. Robinson Township School District,* 358 Pa. 45, 55 A. 2d 803. In pursuance of this authority the City of Pittsburgh, on December 1, 1947, enacted an ordinance imposing annual mercantile license taxes upon persons engaged in certain occupations and businesses at the rate of one mill on each dollar of the volume of the annual gross business transacted by wholesale vendors and dealers and two mills in the case of retail vendors and dealers. The validity of this ordinance was sustained in *Federal Drug Co. v. Pittsburgh,* 358 Pa. 454, 57 A. 2d 849.

Gunn Pontiac was engaged in the business of selling new and used motor vehicles. It paid under protest a mercantile tax on its gross volume of sales of

motor vehicles under installment sales contracts. It is its contention that it was not liable for payment of this tax because it is required, under the Motor Vehicle Sales Finance Act (Act of June 28, 1947, P. L. 1110, 69 PS sec. 601), to pay a "license" fee to the Commonwealth for the privilege of conducting its business as an installment seller of motor vehicles.

The question before us is whether the "license fee" which appellant is required to pay under the Motor Vehicle Sales Finance Act exempts that portion of its volume of business obtained by sales of motor vehicles under installment sales contracts from the Pittsburgh mercantile tax by reason of the exclusion provision of the enabling act under which the city passed its ordinance. We are agreed that the question must be answered in the negative.

"A license fee is a charge which is imposed by the sovereign, in the exercise of its police power, upon a person within its jurisdiction for the privilege of performing certain acts and which has for its purpose the defraying of the expense of the regulation of such acts for the benefit of the general public. . . ." *Pennsylvania Liquor Control Board v. Publicker Commercial Alcohol Co.*, 347 Pa. 555, 560, 32 A. 2d 914; *Pittsburgh Milk Co. v. Pittsburgh*, 360 Pa. 360, 365, 62 A. 2d 49; *Armour and Co. v. Pittsburgh*, 363 Pa. 109, 113, 69 A. 2d 405. The *Pittsburgh Milk Co.* and *Armour* cases, when read together add substance to the bare definition of a license fee.

In the *Pittsburgh Milk Co.* case a bill in equity was filed to restrain the City of Pittsburgh from collecting a mercantile tax and license fee. The plaintiff was engaged in the business of purchasing raw milk from dairy farmers and transmitting the same in bulk to its place of business in Pittsburgh, where the milk was processed, bottled and sold at retail or wholesale. The

Milk Control Law of April 28, 1937, P. L. 417, art. IV, sec. 408, as amended, 31 PS sec. 700j-408, imposes upon milk dealers an annual license fee ranging from $1 to $5,000, depending upon the number of pounds of milk received, produced or brought within the Commonwealth by such dealer during the calendar year preceding the period for which the license is issued. In the year of 1946 the Pittsburgh Milk Company received, produced or brought within the Commonwealth an average daily total quantity of milk of between 25,500 and 50,000 pounds, and paid a license fee of $300 for the year 1947. The Supreme Court stated that the license fee required by the Milk Control Act "is the very type license fee" which the Legislature referred to in the Act of June 28, 1947, P. L. 1145, 53 PS sec. 2015.1; and held that the City of Pittsburgh could not levy a mercantile tax against the Pittsburgh Milk Company.

In the *Armour* case the packers claimed that they were not liable for the payment of the Pittsburgh mercantile license tax because they were required under the Act of May 28, 1915, P. L. 587, as amended by the Acts of June 21, 1939, P. L. 656, and May 11, 1945, P. L. 454, to pay, for each establishment operated by them, an annual license fee of $10 at the time they applied for "registration and license". The Supreme Court held that the $10 fee prescribed in the Act of May 11, 1945, P. L. 454, to accompany the application for registration and license was not "a true 'license fee' within the meaning of that term as employed in the Act of June 25, 1947, P. L. 1145". In the course of its opinion the Court distinguished the *Pittsburgh Milk Co.* case as follows: ". . . that fee [the annual license fee paid by Pittsburgh Milk Company] was a graded one imposed upon milk dealers according to the average quantity of milk daily received or pro-

duced by them, ranging from a minimum of $1 to a maximum of $5,000, thus indicating that it was intended by way of reimbursement for the expense of supervision and regulation of the milk industry, the burden being placed upon the dealers in the proportions in which the magnitude of their respective business operations required such supervision. The charge here in question is wholly different from the license fee thus exacted of the milk dealers, and we are clearly of opinion that the meat-packers are not entitled to exemption from the City of Pittsburgh mercantile license tax merely because of their $10 payments to the Department of Agriculture."

It would thus appear that a "true" license fee is related in amount to the magnitude of the licensee's respective business activities and the corresponding expense of regulation thereof. Here the record discloses that in each of the fiscal years October 1 to September 30 of 1948-49 and 1949-50 more than 5,000 "Installment Sellers (New and Used Car Dealers)" each paid the $10 fee required by the Motor Vehicle Sales Finance Act. It is, of course, perfectly obvious that the volume of business transacted by the various installment sellers would vary and that there would be a corresponding variance in the expense of regulation; yet the Motor Vehicle Sales Finance Act imposes a flat $10 fee upon each installment seller without regard to volume of sales.

There is another consideration which impels us to the conclusion that the fee which the Motor Vehicle Sales Finance Act extracts from installment sellers is not a "license fee" as that term is used by the legislature in the Act of June 25, 1947, supra. It is entirely clear that this legislation was enacted to aid financially stricken political subdivisions in a constantly rising economy. So that the operation of the

Act would not be oppressive, however, the Legislature excepted any privilege, transaction, subject, personal property or occupation subject to a State tax or license fee. The imposition of a nominal fee such as that fixed by the Motor Vehicle Sales Finance Act does not give rise to the danger of oppressive taxation and hence such fee is not of the type intended by the Legislature upon which to base an exemption from local taxation. As stated by the learned court below: "It is a cardinal rule of statutory construction that in interpreting an Act the intention of the Legislature is controlling. Could it be said, with reason, that the Legislature, recognizing the financial plight of local municipalities, since the 'tax anything'[1] law was enacted, for the financial relief of local municipalities . . . would in the same session pass an act involving the regulation of the vast business of selling automobiles on installment contracts, and by placing in the latter act a required fee of $10, intend it to be a license fee, thereby precluding the municipality from imposing mercantile taxes on persons paying said fee? We think not . . . it would be wholly absurd to suggest that the fee of $10 imposed by the Motor Vehicle Sales Finance Act was intended by the Legislature as a 'real' license fee; but that this charge is one designed especially to cover merely the clerical expense of registration and issuance of the license certificate . . ."

Order affirmed.

---

[1] A common appellation for the Act of June 25, 1947, P. L. 1145, supra.