## McGinness Unemployment Compensation Case.

Argued November 10, 1954. Before RHODES, P. J., HIRT, ROSS, WRIGHT, WOODSIDE and ERVIN, JJ. (GUN-THER, J., absent).

*Edward J. McGinness,* for appellant.

*William L. Hammond,* Special Deputy Attorney General, with him *Frank F. Truscott,* Attorney General, for appellee.

OPINION BY WOODSIDE, J., January 14, 1955:

This is an appeal by the claimant from the decision of the Unemployment Compensation Board of Re-

view disallowing compensation benefits under section 401(a) of the Unemployment Compensation Law of December 5, 1936, P. L. 2897 as amended, 43 PS §801-(a).

The bureau and the referee had previously disallowed the claim.

There is no dispute as to the following material facts.

Claimant was involuntarily retired from her last employment with the U. S. Steel Corporation, Pittsburgh on February 6, 1953. She had worked continuously for her employer up until the retirement date. She filed a valid application for benefits on March 6, 1953 and received thereafter the maximum benefits of $780 at the rate of $30 per week for 26 weeks in that benefit year.[1]

On March 9, 1954 she filed an application for a second benefit year thereby establishing as her present base year[2] the fourth calendar quarter of 1952 and the first three calendar quarters of 1953.[3]

---

[1] " 'Benefit Year' with respect to an individual who files or has filed a 'Valid Application for Benefits' means the one-year period beginning with the day as of which such 'Valid Application for Benefits' is filed, and thereafter the one-year period beginning with the day as of which such individual next files a 'Valid Application for Benefits' after the termination of his last benefit year." Act of December 5, 1936, P. L. 2897, §4(b) as amended, 43 PS §753(b).

[2] " 'Base Year' means the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year." Act of December 5, 1936, P. L. 2897 §4(a) as amended, 43 PS §753(a).

[3] " 'Calendar quarter' means the period of three consecutive calendar months ending on March thirty-first, June thirtieth, September thirtieth or December thirty-first, or the equivalent thereof, as determined in accordance with general rules of the department." Act of December 5, 1936, P. L. 2897 §4(d) as amended, 43 PS §753(d).

Section 401(a), supra, provides that a claimant, to be eligible, must have been paid *wages* for employment within his base year equal to not less than thirty times his weekly benefit rate.

During the claimant's base year, established as previously indicated, she earned the following amounts:

| | | | |
|---|---|---|---|
| fourth | quarter of 1952 | — | $1045.95 |
| 1st | quarter of 1953 | — | 697.00 |
| 2nd | quarter of 1953 | | none |
| 3rd | quarter of 1953 | | none |

However, the fourth quarter of 1952 earnings did not fall within the statutory definition of wages and could not be used in determining the claimant's compensation rights, because during the first three quarters of 1952 she earned in excess of $3000. Section 4 (x) (1) of the Act specifically provides that the term wages shall not include: "That part of the remuneration which is in excess of the *first* three thousand dollars ($3000) paid to an individual by each of his employers during a *calendar year* . . ." (emphasis supplied)

Section 4 (x) (1) further provides: "Remuneration in excess of three thousand dollars ($3000) excluded from the definition of wages under the provisions of this subsection may not be considered in determining the compensation rights of any individual under this act . . ."

By virtue of these express provisions the claimant's earnings during the fourth quarter of 1952 must be excluded in determining claimant's financial eligibility.

The determination of a claimant's weekly benefit rate is provided for in section 404 of the Act of December 5, 1936, P. L. 2897, §404 as amended, 43 PS

§804 and is based upon his highest quarterly wages.[4]

Thus with the $1045.95 earnings excluded, the claimant's highest quarterly wages were those earned in the first quarter of 1953 in the amount of $697. The "Tables Specified for the Determination of Rate and Amount of Benefits" found in section 404, supra, provide that highest quarterly wages in the amount of $697 entitle the wage earner to a weekly benefit rate of $28.

Upon applying the test of section 401(a) it was found that 30 times the weekly benefit rate of $28 totals $840 while the "wages" earned during the claimant's base year totalled only $697. Under these circumstances a disqualification under section 401(a) by the Board was proper.

It is the contention of the claimant that the year referred to in section 4 (x) is a fiscal year ending June 30. By calculating her income on this basis she would be entitled to compensation for a second benefit year.

She bases this contention on an amendment made to the Unemployment Compensation Law in 1949, P. L. 1854, and particularly sub-sections (z.3) and (z.4) added to the definition section at that time.

These definitions were contained in an amendment the purpose of which was to provide for modification of the manner in which employer contribution rates were to be determined. They were as follows:

"(z.3) 'Computation Date' means June thirtieth of the year preceding the effective date of new rates of contribution, which date shall be January first of the succeeding year.

---

[4] "The 'highest quarterly wages' of an employe shall be the total wages (computed to the nearest dollar) which were paid to such employe in that calendar quarter in which such total wages were highest during the base year." Section 4(b) of the Unemployment Compensation Law, as amended, 43 PS §804(b).

"(z.4) 'Annual Payroll' means the total amount of 'wages', as herein defined, paid by any employer during the twelve consecutive calendar month period ending on June thirtieth of any year, including such wages paid by any other employer appertaining to that balance of the reserve account of such other employer which may have been transferred to such employer."

These definitions deal with contributions and not benefits. Section 4 (x) which relates to benefits and not contributions specifically uses "calendar year."

All of the aforementioned provisions and definitions which were applied to determine the claimants eligibility are closely-interrelated parts of a legislative enactment dealing with the criteria for determining claimant eligibility. The amendments referred to by claimant are equally closely-interrelated provisions and definitions dealing with criteria for determining employer contribution rates.

Webster's New International Dictionary, 2nd Edition, Unabridged, states that "calendar . . . year . . . is divided into 12 calendar months, and is now reckoned as beginning with January 1 and ending with December 31."

This is so commonly accepted as the meaning of "calendar year" that any other conception of the term is hardly worthy of discussion.

Under the Statutory Construction Act of May 28, 1937, P. L. 1019, §33, 46 PS §533 words and phrases in statutes should be construed according to their common and approved usage. "Words having a precise and well-settled legal meaning must be given that meaning when they appear in statutes unless there is a clear expression of legislative intent to the contrary." *Subers Liquor License Case,* 173 Pa. Superior Ct. 558, 562, 98 A. 2d 639 (1953).

An amendment made to a part of the act dealing with a different phase of the law does not change the meaning of "calendar year" contained in section 4(x).

Order affirmed.