## Philadelphia Coca-Cola Bottling Company *v.* Philadelphia, Appellant.

Argued April 25, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Jerome J. Shestack,* First Deputy City Solicitor, with him *Jacob J. Siegal,* Assistant City Solicitor, *Abraham Wernick,* Deputy City Solicitor and *Abraham L. Freedman,* City Solicitor, for appellants.

*Frank Rogers Donahue,* with him *Robert D. Abrahams, Donahue, Battle & Donahue* and *Abrahams & Lowenstein,* for appellees.

*Joseph W. Henderson,* with him *Bayard M. Graf, George M. Brodhead* and *Rawle & Henderson,* for Metropolitan Bottling Co., Inc., intervenor.

*George P. Orr,* with him *George P. Williams, III* and *Orr, Williams & Baxter,* for The Charles E. Hires Company, intervenor.

OPINION BY MR. JUSTICE ARNOLD, June 27, 1955:

This is an appeal from a decree enjoining the city of Philadelphia from imposing a mercantile license tax upon the portion of the business of the Philadelphia Coca-Cola Bottling Company which is subject to tax under the provisions of the Carbonated Beverages Act of 1925, P. L. 730, as amended, 31 PS §761 et seq. The Booth Bottling Company, Metropolitan Bottling Co., Inc., and Charles E. Hires Company were granted leave to intervene.

Plaintiffs and intervenors are bottlers of soft drinks with plants located in the city of Philadelphia. They claim exemption from the Philadelphia mercantile tax by reason of the Sterling Act of 1932, Special Sessions, P. L. 45, 53 PS §4613, on the ground that under the Carbonated Beverages Act each is required to pay the state a fee of $50.00 imposed by that Act. That is, since the fee so imposed is a true license fee, they cannot be required to pay the city's mercantile license fee.

The Carbonated Beverages Act is a comprehensive statute, providing regulation and supervision of the soft drink industry. The enforcement of the Act is lodged with the Department of Agriculture, and provides that the secretary shall appoint special agents to enforce the provisions of the Act, as well as such additional agents as may be necessary to maintain supervision over the industry. Section 19 of the Act provides for payment of license and registration fees to the Secretary of Agriculture, who in turn is to pay these moneys into the State Treasury. It further provides that "such moneys shall constitute a special fund and are hereby *permanently appropriated to the Department of Agriculture for the purpose of enforcing the provisions of this act.*"[1] (Italics supplied).

The evidence showed that in 1931 the expense of supervision and enforcement of the Act was approximately $20,000, and that the receipts amounted to about $42,000.[2] Less than one-half of the moneys received was used for the salaries and activities of the beverage agents.[3] The receipts for 1952-53 were $55,100, a sum sufficient to provide for extensive regulation. There is no basis for argument that an inspection of the Act will show that the receipts will not now

---

[1] Although all special accounts, with some exceptions were abolished by the Fiscal Code of 1927, this does not change the facts that under the Carbonated Beverages Act the fees were designated for a special purpose. The Code "merely changed the manner in which the money was to be carried on the books of the Commonwealth": *Flynn v. Horst*, 356 Pa. 20, 28, 51 A. 2d 54.

[2] The receipts for the fiscal years between June, 1943, and June, 1953, were as follows: 1943-44, $43,350; 1944-45, $46,100; 1945-46, $45,850; 1946-47, $40,800; 1947-48, $46,550; 1948-49, $47,050; 1949-50, $45,800; 1950-51, $45,550; 1951-52, $51,000; 1952-53, $55,100.

[3] Enforcement was accomplished by the employment of four agents.

cover the expense of enforcement. Nor can it be held, without evidence to establish the fact, that the supervision and enforcement costs will exceed the amount of receipts in any of the years subsequent to 1931.

Defendant offers no testimony but contents itself with the blunt statement that an inspection of the Act, and its type of regulation, demonstrate clearly that the $50.00 fee was not based upon the probable cost of supervision. But there was no evidence to contradict that of the plaintiffs and, when believed by the chancellor, his findings cannot be set aside merely by an inspection of the Act plus the argument that the fee paid was too small to cover the extent of regulation required.

A true license fee is ". . . a charge which is imposed by the sovereign, in the exercise of its police power, upon a person within its jurisdiction for the privilege of performing certain acts and which has for its purpose the defraying of the expense of the regulation of such acts for the benefit of the general public; it is not the equivalent of or in lieu of an excise or a property tax, which is levied by virtue of the government's taxing power solely for the purpose of raising revenue": *Pennsylvania Liquor Control Board v. Publicker Commercial Alcohol Co.*, 347 Pa. 555, 560, 32 A. 2d 914. The name given to the tax by the taxing authority is of no moment: *Murray v. Philadelphia*, 364 Pa. 157, 71 A. 2d 280.

The court below well stated that in the cases in which the charges imposed were held not to be true license fees,[4] not one of them involved an act having

---

[4] See *Armour & Co. v. Pittsburgh*, 363 Pa. 109, 69 A. 2d 405, where the fee was $10; *Tifft v. Philadelphia*, 374 Pa. 604, 619, 98 A. 2d 182, where the fees were $2 for an insurance agent and $10 for a broker; and *National Biscuit Co. v. Philadelphia*, 374 Pa. 604, 621, 98 A. 2d 182, where the fees were $5, $10 and $20 for bakeries.

a section similar to Section 19 of this Act permanently appropriating the funds received for enforcement of the Act. In each of those cases the statute made no mention as to the disposition to be made of the funds collected, or provided that they should go into the general fund. Contrary to the city's contention, the inquiry is not directed to the question whether the cost of enforcement against one person might exceed $50.00 per year, but whether the aggregate fees collected from the industry would be sufficient to pay the probable cost of regulating the bottlers as a whole. See *Honorbilt Products, Inc. v. Philadelphia*, 380 Pa. 630, 112 A. 2d 108.

It is significant that if funds were needed, application could have been made to the Legislature for an increase in the established rates. No such application was made. Nor do we consider the fee a nominal one. The uncontradicted evidence shows that the fees collected under Section 19 were sufficient during the thirty odd years during which the Commonwealth has enforced the Act, with balances left over each year, and therefore the fees were true license fees. Using the same argument as the city uses,—that inspection of the Act shows that the fees would not produce sufficient sums to enforce it,—an inspection of the Act also reveals that the fee of $50.00 per plant aggregates a sum far greater than the mere clerical expense involved in the enforcement.

Nor is there anything inherently wrong with flat fees. While graduated fees might more clearly indicate that license fees were intended, it is possible that either might be a true license fee.

As stated in *National Biscuit Co. v. Philadelphia*, supra, at page 615: "The distinguishing features of a license fee are (1) that it is applicable only to a type of business or occupation which is subject to supervi-

sion and regulation by the licensing authority under its police power; (2) that such supervision and regulation are in fact conducted by the licensing authority; (3) that the payment of the fee is a condition upon which the licensee is permitted to transact his business or pursue his occupation; and (4) that the legislative purpose in exacting the charge is to reimburse the licensing authority for the expense of the supervision and regulation conducted by it." All of these requirements are satisfied under the facts of this case, and we cannot but hold that the fee exacted under this Act is a true license fee. Cf. *Philadelphia Saving Fund Society v. Philadelphia,* 374 Pa. 604, 622, 98 A. 2d 182; *Household Finance Corporation v. Philadelphia,* 374 Pa. 604, 623, 98 A. 2d 182; *Household Consumer Discount Company v. Philadelphia,* 374 Pa. 604, 624, 98 A. 2d 182. In opinions by ADAMS, J. the Court of Common Pleas of Allegheny County came to the same conclusion on the exact question in the following cases: *Dad's Root Beer Bottling Co. v. Pittsburgh,* 3519 and 3520 April Term, 1949, *Roma Bottling Works Company v. Pittsburgh,* 945 and 946 July Term, 1949, *Louis Unatin v. Pittsburgh,* 1006 and 1007 July Term, 1949, *Sam Berkowitz v. Pittsburgh,* 1773 and 1774 October Term, 1949, and *Squirt Bottling Company v. Pittsburgh,* 1775 and 1776 October Term, 1949.

The testimony of witnesses, consisting of their recollections pertaining to the intent of the Legislature in enacting the Act, is of doubtful validity. In view of our disposition of this case we deem it unnecessary to pass upon the question.

Decree affirmed, defendants to pay the costs.

Mr. Justice JONES dissents.