Freeman, Appellant, *v.* City of Philadelphia.

Argued March 31, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*Paul Freeman,* with him *Freeman, Fox & Fiechter,* for appellants.

*Jerome J. Shestack,* First Deputy City Solicitor, with him *Jacob J. Siegal,* Assistant City Solicitor, *James L. Stern* and *Abraham Wernick,* Deputy City Solicitors, and *Abraham L. Freedman,* City Solicitor, for appellees.

OPINION BY ROSS, J., July 21, 1955:

Appellants initiated this action by a complaint in equity to restrain the City of Philadelphia from collecting a tax levied against auctioneers. The court below dismissed the complaint and this appeal followed.

On February 23, 1945 the City of Philadelphia passed an ordinance "imposing a tax on all persons, firms, corporations and associations carrying on the business of auctioneers; providing for the collection thereof, and for the registration of such persons, firms, corporations and associations, and imposing penalties". The tax imposed is $500 per year. Appellants paid the tax from 1945 to 1953 and this action was to prevent its collection for 1954. Three grounds are asserted as invalidating the tax: (1) That the "tax", although so called throughout the ordinance, is in reality a license fee "and since it was enacted solely to raise and does raise revenue it is void under the decision in *Flynn v. Horst,* [356 Pa. 20, 51 A. 2d 54]"; (2) that if it is really a revenue measure it violates the constitutional requirement that tax measures be uniform upon the same class of subjects within the territorial limits of the levying authority; and (3) that the city had no power to enact the ordinance because the Sterling Act, Act of August 5, 1932, P. L. 45, 53 PS sec. 4613, prohibits the enactment of a tax on a

privilege or occupation which the state *then* taxed. (From 1921 to 1943, when it was repealed, the state imposed a tax upon auctioneers.)

Appellants' first contention raises the question whether the charge of $500 a year on auctioneers is a "tax" or a "license fee". In *Gunn Pontiac, Inc. v. Pittsburgh,* 174 Pa. Superior Ct. 75, 99 A. 2d 404, at page 79, we stated: "It would thus appear that a 'true' license fee is related in amount to the magnitude of the licensee's respective business activities and the corresponding expense of regulation thereof." Here there is a flat charge on auctioneers regardless of the amount of business done and *no* expense of regulation. While the title is always a part of a statute or ordinance and, as such, must be considered in construing the enactment (*City Stores Co. v. Philadelphia,* 376 Pa. 482, 103 A. 2d 664), it is the substance of the law or ordinance, rather than the designation or name given it by the legislative body, that is controlling. *Sterling v. Philadelphia,* 378 Pa. 538, 106 A. 2d 793. Here not only the title but the entire substance of the ordinance indicates that it is a taxing measure. It says nothing about regulating auctioneering and contains no provision for regulations. However, appellants contend that despite the fact that the ordinance purports only to raise revenue it is really a licensing measure enacted under the police power and thus void because *all it does is raise revenue.* This certainly is circuitous and specious reasoning. As observed by the learned court below: "[They] set up a straw man calling the tax a license fee under the police power and then seek to destroy it by the argument . . ." that it primarily raises revenue. Appellants, notwithstanding, contend that it is still a licensing measure because the tax is imposed for permission to engage in the business of auctioneering and the police power is relied upon to

enforce its payment. We cannot agree that these are the conclusive tests, nor can we agree that this ordinance imposes the fee for *permission* to engage in the business. As we interpret the ordinance, it imposes an *occupation* tax by virtue of the authority given by the Sterling Act. It thus provides, inter alia, that those engaged in the business of auctioneering at the date of its enactment shall register with the city treasurer and pay the tax before a certain date and shall pay the annual tax on January first of each year thereafter. As to persons or firms which were not in business at the time the ordinance was enacted it provides that they shall register and pay the tax prior to their entry into such business. Civil remedies (penalties, costs and interest) are provided for collection as well as criminal penalties for violation of the provisions of the ordinance or for carrying on the business of auctioneering without payment of the tax and registering. We cannot see, as appellants contend, how these provisions indicate that the fee is imposed for *permission* to engage in business. These provisions are nothing more than enforcement provisions. Keeping in mind that this is an occupation tax, we can see no more effective manner of enforcing it than by providing penalties for engaging in the occupation without paying the tax. We agree that the police power is used to *enforce* the measure, but it is so used in all revenue measures and it does not follow that the ordinance was *enacted* under the police power. The requirement here that those entering the business after the effective date of the ordinance must register and pay the tax before conducting business is likewise a mere enforcement provision. It provides a *time* for payment of the tax when a new auctioneer starts business other than at the time regularly set for payment. If he conducts his business without paying the tax he pays a penalty for his failure

to pay the tax, not because he failed to obtain permission to enter the business.

In *Armour and Co. v. Pittsburgh,* 363 Pa. 109, 69 A. 2d 405, the Act of May 11, 1945, P. L. 454, sec. 3, 31 PS sec. 470.1, which provides that "it shall be the duty of every person . . . [engaged in meat packing] . . . to apply to the department for a license to do so, . . . before the first day of January of each . . . year, and pay to the department at the time said application for registration is filed an annual fee of ten dollars . . .", was held *not* to impose a *true* "license fee". The language concerning permission and regulation certainly is much stronger than in the instant case but, of course, that was not conclusive. The ordinance here merely requires, as a method of collection, that auctioneers register and pay the tax at a certain time. It does not require that permission be obtained, nor does it provide for any regulation, a most important feature of a licensing act.

For some of the factors to be considered in determining a licensing measure, see *National Biscuit Co. v. Philadelphia,* 374 Pa. 604, 98 A. 2d 182, where, at page 615, Mr. Chief Justice HORACE STERN stated: "The distinguishing features of a license fee are (1) that it is applicable only to a type of business or occupation which is subject to supervision and regulation by the licensing authority under its police power: (2) that such supervision and regulation are in fact conducted by the licensing authority; (3) that the payment of the fee is a condition upon which the licensee is permitted to transact his business or pursue his occupation; and (4) that the legislative purpose in exacting the charge is to reimburse the licensing authority for the expense of the supervision and regulation conducted by it." Here the ordinance was not enacted under the police power but under the power

given by the Sterling Act to the City of Philadelphia
to impose a tax. No supervision or regulation is pro-
vided for, nor does the ordinance purport to be super-
visory or regulatory. The payment of the tax here
is necessary to avoid criminal punishment, but that is
merely a matter of enforcement, not regulation. Ad-
mittedly the whole purpose of this ordinance is to raise
revenue. It does not profess to use any of the funds
for reimbursement of costs of regulation.

The cases cited by appellants in support of their
contention, *Olan Mills v. Sharon,* 371 Pa. 609, 92 A.
2d 222, and *Warner Bros. v. Pottstown,* 164 Pa. Supe-
rior Ct. 91, 63 A. 2d 101, are not applicable to the pres-
ent situation. They each involve fees which were levied
under the *guise of license fees* but in reality were reve-
nue measures. That is a far different situation from
here where the City of Philadelphia had the power to
levy a tax and, therefore, found it unnecessary to at-
tempt to raise revenue by resort to the use of its po-
lice power to regulate business. Here there was no ne-
cessity to disguise the revenue measure as a license
measure. *Flynn v. Horst,* supra, heavily relied upon
by appellants, is equally inapplicable. In that case the
statute on its face purported to be a licensing measure
but the fee it exacted was unreasonable and excessive
and bore no relation to the cost of enforcement. The
Supreme Court, therefore, struck it down. Admittedly
here the revenue brought in is far in excess of what
the cost of regulation would be, even if there were any
regulation. This is not a licensing measure enacted
under the police power. The City of Philadelphia un-
der its power to tax clearly intended only to pass a
revenue measure, and on its face and throughout its
provisions that is made abundantly clear. In the words
of the learned court below it is, as it purports to be,

"a revenue measure pure and simple and not a license fee in any sense of the term . . ."

We come now to appellants' second contention: that if it is a taxing measure it is in violation of Article IX, section 1 of the Pennsylvania Constitution, which provides: "All taxes shall be uniform, upon the same class of subjects within the territorial limits of the authority levying the tax and shall be levied and collected under general laws." They contend that since the Mercantile License Tax Ordinance of 1952 auctioneers are required to pay not only the tax imposed by that ordinance, but also the tax required of the 1945 ordinance here in question; hence they are discriminated against because other occupations and businesses pay only the tax levied by the Mercantile License Tax Ordinance. Section 10 of that ordinance provides that the taxes imposed thereby shall be *in addition* to any and all other taxes imposed by the City of Philadelphia. Our sole concern is whether this double taxation amounts to an unreasonable discrimination in violation of the uniformity provision of the Constitution. The Constitution prohibits imposing different taxes *upon the same class* of subjects. As we understand appellants' position, the class involved here is not auctioneers, but all businesses and professions in Philadelphia, of which class they are but a part and hence not taxed with the same uniformity as the others. We cannot agree. For the purposes of the Mercantile License Tax, an excise tax on the privilege of doing business, the class is as stated by appellants, but there the tax is uniformly levied. The 1945 ordinance is not part of the Mercantile License Tax, but is a separate and distinct tax, an occupation tax, levied prior to the mercantile tax, and which is imposed upon only one kind of business. The practical effect of the mercantile tax is to increase the amount of tax paid by the auctioneers. Had the

city merely increased the auctioneers' tax of 1945 without making them subject to the mercantile tax, the practical and indeed the legal effect would be the same. Appellants' contention that everyone should pay the same tax has never been a valid objection to the power of the sovereign to tax different classes differently.

A classification is considered reasonable if it sets up as a distinct group persons engaged in similar kinds of business. *Allentown School District. Mercantile Tax Case,* 370 Pa. 161, 87 A. 2d 480. " 'If the selection is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law. Our duty is to sustain the classification adopted by the legislature if there are substantial differences between the occupations separately classified. Such differences need not be great.' " *Turco Paint and Varnish Co. v. Kalodner,* 320 Pa. 421, 432-433, 184 A. 37. Appellants admit that auctioneers from 1921 to 1943 were separately classified by the state for the purposes of taxation and they paid an annual tax of $500 thereunder to the state. We can see nothing unreasonable in the classification by the 1945 ordinance of auctioneers as a separate class for taxation; and since the tax is imposed with uniformity upon all auctioneers, we dismiss appellants' second contention.

Appellants' final assertion is based upon the specific wording of the Sterling Act, Act of August 5, 1932, P. L. 45, 53 PS sec. 4613, which provides: "From and after the effective date of this act, the council of any city of the first or second class shall have authority . . . [to levy taxes on persons, transactions, occupations, privileges, etc.] within the limits of such city . . . except that such council shall not have authority to levy, assess and collect . . . any tax on a privilege,

transaction, subject or occupation . . . which is *now* or may hereafter become subject to a State tax or license fee. . . . It is the intention of this section to confer upon cities of the first and second classes the power to levy, assess and collect taxes upon any and all subjects of taxation which the Commonwealth has power to tax but which it does not *now* tax or license, subject only to the foregoing provision that any tax upon a subject which the Commonwealth may hereafter tax or license shall automatically terminate upon the effective date of the State act imposing the new tax or license fee." (Emphasis supplied.)

Appellants contend that the word "now" in the Act prohibits the City of Philadelphia from taxing auctioneers because in 1932 when the Sterling Act was passed the State imposed a $500 tax upon them. They feel that those subjects which were taxed by the state in 1932 are forever lost to the city taxing power and that the repeal of the state tax in 1943 did not open up this subject of taxation to the municipality. The learned court below properly rejected this narrow interpretation of the Act as being unreasonable and not intended by the legislature. Statutory Construction Act, Act of May 28, 1937, P. L. 1019, sec. 52(1), 46 PS sec. 552. The purpose of the Sterling Act was to enlarge the taxing authority of the municipality subject only to the limitation that there could be no double taxation of the same subject where the state preempted the field. "The legislative prohibition 'that such council shall not have authority' to tax anything 'which is now or may hereafter become subject to a State tax or license fee' was intended to prevent double taxation of the same thing; in other words, the city was instructed that it could not tax subjects taxed by the state. The right of the state was paramount. If therefore, the tax proposed to be collected pursuant

to the amended ordinance results in such double taxation, it is unauthorized and must be restrained." *Murray v. Philadelphia,* 364 Pa. 157, 165, 71 A. 2d 280. The plain intention of the legislature is the controlling principle (Statutory Construction Act, section 51, 46 PS sec. 551), and the courts can construe words to give effect to that intention. For example, in *Pennsylvania Labor Relations Board v. Martha Co.,* 359 Pa. 347, 352, 59 A. 2d 166, the Court construed the word "and" as meaning "or", in order to give the act "the flexibility necessary to achieve the aim for which it was intended". The use of the word "now" by the legislature in the Sterling Act obviously was intended to make clear that municipalities could not tax matters which the state at that time was taxing, so long as the state continued to tax them. The mechanics of the statute indicate flexibility, for there is provision for automatic termination of the municipality's authority to tax when the state taxes a subject in the future. We think this abundantly indicates that the primary intention was to prevent concurrent double taxation. Otherwise the absurd result would be that as to certain subjects the city could tax until the state preempted the field but as to others, taxed by the state in 1932, the state could tax until it relinquished its right, after which no one could tax unless and until the state again decided to exact its bounty. Clearly the construction which appellants give to the word "now" in the Sterling Act is not consistent with the intention of the legislature in passing the Act. We are of the opinion that the legislative intent was to prohibit only *concurrent* double taxation, rather than a prohibition measured arbitrarily by those matters which the state taxed in 1932, without regard to whether it relinquished this taxing power at a later date.

Decree affirmed, costs to be paid by appellants.

GUNTHER, WOODSIDE, and ERVIN, JJ., dissent.