Philadelphia Tax Review Board, Appellant, *v.* Smith, Kline and French Laboratories.

Argued January 20, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Leonard B. Rosenthal*, Assistant City Solicitor, with him *Louis E. Vignola*, Assistant City Solicitor, *Matthew W. Bullock, Jr.*, Second Deputy City Solicitor, and *Edward G. Bauer, Jr.*, City Solicitor, for Tax Review Board, appellant.

*Robert R. Batt*, with him *Ballard, Spahr, Andrews & Ingersoll*, for appellee.

OPINION BY MR. JUSTICE COHEN, February 4, 1970:

Smith, Kline and French Laboratories manufactures and sells drugs, as defined by The Drug, Device and Cosmetic Act of September 26, 1961, P. L. 1664, §2(b), 35 P.S. §780-2(b) (Act) at two facilities located in Pennsylvania, including one within the limits of the City of Philadelphia. As required by Section 11 of the Act, Smith, Kline and French registered its manufacturing establishments in Pennsylvania in 1962 with the Secretary of Health of the Commonwealth and paid to

the Commonwealth the statutory registration fees dictated by §11(c) of the Act, viz., $100.00 for each manufacturing plant or a total of $200.00. Smith, Kline and French has continued to pay these registration fees annually thereafter.

For the years 1962 through 1965, inclusive, Smith, Kline and French filed Mercantile License Tax returns with the City of Philadelphia (City) and paid Mercantile License Taxes and fees to the City as follows:

| Taxable Year | Amount of Tax and Fee Paid |
|---|---|
| 1962 | $24,032.44 (Tax) |
| 1963 | 29,671.96 (Tax) |
| 1964 | 3.00 (Fee) |
| | 33,522.30 (Tax) |
| 1965 | 3.00 (Fee) |
| | 40,214.69 (Tax) |

On January 5, 1966, Smith, Kline and French filed with the City Revenue Commissioner a refund claim for $127,450.39, being the total amount of Mercantile License Taxes and fees paid for the period 1962 to 1965. The basis of the refund claim was that the registration fees paid to the Commonwealth under the Act constituted true license fees, and consequently the City was prohibited from imposing its Mercantile License Tax under the Act of August 5, 1932, P. L. 45, as amended, §1, 53 P.S. §15971(a), popularly known as the "Sterling Act." This section, while granting first class cities broad authority to levy, assess and collect taxes, contains the following explicit exception: ". . . except that such council shall not have authority to levy, assess and collect . . . any tax on a privilege, transaction, subject or occupation, or on personal property, which is now or may hereafter become subject to a State tax or license fee."

By letter dated March 23, 1966, the Revenue Commissioner denied the refund on the ground that the registration fees paid by Smith, Kline and French under the Act did not represent true license fees within the meaning of the Sterling Act. The Tax Review Board denied the appeal petition without opinion.[1]

On appeal to the Court of Common Pleas of Philadelphia County, the decision of the Tax Review Board was reversed. The lower court held that the registration fees paid by the drug manufacturer to the Commonwealth met all the criteria of true license fees and precluded the City from levying its Mercantile License Tax under the Sterling Act. Instead of ordering a refund, however, the lower court remanded the case to the Tax Review Board for the purpose of determining which of the activities, if any, of Smith, Kline and French fall outside the sphere of regulation under the Act and consequently became subject to the City's Mercantile License Tax. The City of Philadelphia then brought this appeal under the Act of June 16, 1836, P. L. 784, §1, 17 P.S. §41.

In deciding this case, the answers to two questions must be found. First, what did the legislature mean when it (in an attempt to eliminate double taxation) exempted from local taxation activities "subject to a State . . . license fee?" Secondly, does The Drug, Device and Cosmetic Act impose the type of license fee the legislature referred to in the Sterling Act?

A number of cases have attempted to answer the first question: *Philadelphia Coca-Cola Bottling Company v. Philadelphia,* 382 Pa. 299, 115 A. 2d 207 (1955); *Honorbilt Products, Inc. v. Philadelphia,* 380 Pa. 630, 112 A. 2d 108 (1955); *National Biscuit Co. v.*

---

[1] By agreement with the City, claimant amended its claim to include an additional $36,719.88 in Mercantile License Taxes paid for 1966.

*Philadelphia*, 374 Pa. 604, 98 A. 2d 182 (1953); *Armour and Company v. Pittsburgh*, 363 Pa. 109, 69 A. 2d 405 (1949) (this case and the one following construe the Act of June 25, 1947, P. L. 1145 rather than the Sterling Act, but both are relevant because the statutory wording and legislative purpose are identical); *Pittsburgh Milk Company v. Pittsburgh*, 360 Pa. 360, 62 A. 2d 49 (1948); *Pennsylvania Liquor Control Board v. Publicker*, 347 Pa. 555, 32 A. 2d 914 (1943); *Freeman v. City of Philadelphia*, 178 Pa. Superior Ct. 290, 116 A. 2d 349 (1955); *Gunn Pontiac, Inc. v. Pittsburgh*, 174 Pa. Superior Ct. 75, 99 A. 2d 404 (1953).

The approach of all the cited cases has been to see "license fee" as representing a regulatory statute enacted under the legislature's police powers. *Pa. Liq. Con. Bd. v. Publicker*, supra at 560. The cases then apply the four criteria developed by this Court in *National Biscuit*, supra.

It appears to us that the cited decisions do not properly interpret the Sterling Act. In assuming that "license fee" can only refer to regulation under the Commonwealth's police power, they ignore the possibility that "license fee" can refer to the raising of revenue under the Commonwealth's taxing power. 33 Am. Jur. Licenses §2 (1941). Considering the legislature's intent in 1932, the latter construction makes the most sense. The Sterling Act is a permissive one; one that grants power to first class cities, and the reservation of power in the clause under consideration must be seen in the light of the legislative intent of providing sources of revenue for impoverished cities. Under the interpretation given in the cited decisions, the payment of $50 or $100 to the Commonwealth can deprive a city of many tens of thousands of dollars in tax revenue. Here appellee argues that its payment to the Commonwealth of $1000 over a five year period deprives Philadelphia of $164,170.27. It would certainly be anoma-

lous for the legislature to pass an act supposedly for the benefit of the cities and then take away much of what had been granted.

This problem was also recognized in *National Biscuit,* supra: "While it may seem, from a practical standpoint, that the payment of a mere license fee to the Commonwealth ought not to be regarded as sufficient to preclude the City from imposing a mercantile license tax on the State's licensee, nevertheless the provision in the Sterling Act in that regard is explicit and unambiguous, and it is for the legislature alone to remove this limitation on the City's power if that body should determine that such action is desirable." 374 Pa. at 615.

There is no direct legislative history that the legislature meant "license fee" in a regulatory sense, and viewing it in a revenue sense does seem to best carry out what appears to have been the legislative intent.

It is the opinion of this Court that the power of cities under the Sterling Act is ousted only when the legislature has enacted a revenue-producing measure covering the same person, transaction, occupation, activity, privilege, subjects or personal property. Close questions will arise as to whether a particular enactment is a revenue-producing one, but it is not necessary to decide any such questions here. As a general rule, however, a revenue measure can be identified by (1) the large monetary income derived and (2) the large income compared to the costs of collection and supervision.

It is next necessary to determine into which category The Drug, Device and Cosmetic Act falls. It should be noted that appellant and appellee take the position opposite to that which they might have been expected to take. That, undoubtedly, is due to reliance on authorities this Court has now ruled are not controlling on the issue in question.

Because it does meet the four requirements laid down in *National Biscuit,* supra at 615 (which are still the test of a "regulatory" license fee) we find that The Drug, Device and Cosmetic Act is a regulatory measure passed under the Commonwealth's police power; thus the City of Philadelphia is not barred by the Sterling Act. The Drug Act is clear in subjecting the industry to supervision and regulation by the licensing authority. Act of September 26, 1961, P. L. 1664, §§4, 11, 16, 17. Also, there seems no question that payment of the fee is a condition upon which the licensee is permitted to transact his business. Act, §§4, 11. The lower court found sufficient evidence that such supervision and regulation was actually conducted by the regulating agency. The Stipulation of Facts supports this finding adequately. Finally, leaving aside Dr. Maxwell's testimony (as to whose admissibility appellant objected), the fact that the total fees collected from manufacturers and wholesalers throughout the period in question (4 years) so closely approximated the total expenses of supervision and regulation ($197,405 against $206,750.24), indicates that the legislative purpose in exacting the charge was to reimburse the licensing authority for the expenses of supervision and regulation. The same fact indicates that the Act was not designed as a revenue-producing measure and that the prohibition in the Sterling Act should not apply.

Judgment reversed.

---

OPINION BY MR. JUSTICE ROBERTS:

I could not agree more completely with the result reached in this case. I must note, however, that I do not feel it necessary to reach the difficult question of what is a "license fee," for I would first compare the so-called "license fee" imposed by the Commonwealth with the tax imposed by the city. If they both fall on precisely the *same* "privilege, transaction,

subject or occupation," then, and only then, do we need reach the question of the proper definition of a ".license fee."

The purpose of the Sterling Act is to prohibit double-taxation, that is, to avoid a situation where two governmental units, the state and its political subdivision, are seeking revenue from a tax or license fee on the same base. We have never held, however, that merely because a business is taxed on a certain aspect of its operations by the Commonwealth, that it cannot therefore be taxed on a different aspect by the city. For example, in *National Biscuit Co. v. Philadelphia*, 374 Pa. 604, 98 A. 2d 182 (1953), we held that the payment of a state corporate income tax does not bar the city from imposing a mercantile tax which is based on the gross volume of business. Similarly, in *Philadelphia v. Samuels*, 338 Pa. 321, 12 A. 2d 79 (1940), we held that there was no conflict between the state corporate income tax and a parking lot tax based on gross receipts. Although in both cases we used the labels "property tax" and "excise tax" to distinguish the taxes involved, the distinction does not rest on labels. It rests on the different aspects of the business which are being taxed. The corporate income tax is a tax based on net income; the mercantile and parking lot taxes are taxes based on gross sales and receipts.

In the instant case the Commonwealth has placed a license fee of $100 on each of appellee's two manufacturing plants. The city has placed a mercantile tax on appellee's gross sales. It is even clearer here than in *National Biscuit* and *Samuels*, supra, that the two taxes fall on entirely different aspects of appellee's business. This is not, in my view, the double-taxation which the Sterling Act forbids. A corporation may be required to pay different types of taxes based on different factors and items; the Sterling Act only forbids the city from taxing the same aspect of the business

that the Commonwealth taxes. Since the license fee here is not based on gross sales, the city has the power to levy a tax on such sales. Accordingly, I concur in the result.

Mr. Justice EAGEN joins in this opinion.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I dissent, although very regretfully. The Sterling Act, which all agree was intended to prohibit double taxation, has been at times confusingly and conflictingly interpreted. This has produced a result which at times and in some respects has been so unfair to Philadelphia that it should be changed and liberalized by the Legislature (and not by the Courts) in order to limit the State's prohibition against double taxation to *that which is practically and realistically double taxation.*

---

DISSENTING OPINION BY MR. JUSTICE JONES AND MR. JUSTICE POMEROY:

The question before us is whether the appellee's payment of the statutory registration fee prescribed by §11(c) of The Drug, Device and Cosmetic Act[1] exempts it from the imposition of the mercantile license tax of the City of Philadelphia. The statute commonly known as the Sterling Act[2] grants Philadelphia the power to levy and collect a wide range of taxes for general revenue purposes, subject, however, to the following exception: ". . . except that such council shall not have authority to levy, assess and collect . . . any tax on a privilege, transaction, subject or occupation, or on personal property, which is now or may hereafter become

---

[1] Act of September 26, 1961, P. L. 1664, 35 P.S. §780-11(c).

[2] Act of August 5, 1932, P. L. 45, as amended, July 26, 1961, P. L. 904, §1, 53 P.S. §15971(a).

subject to a State tax or license fee." The majority[3] concludes that this statutory reference to "license fee" was intended by the legislature to refer only to revenue-producing license fees and not to regulatory license fees; that the registration fee imposed upon appellee is a regulatory or true license fee; that the Commonwealth's imposition of that fee does not bring appellee within the Sterling Act exception; and that appellee is, therefore, subject to the Philadelphia mercantile license tax. We are unable to agree with this line of reasoning.

Prior to the instant appeal, it has been the settled opinion of our Court that this portion of the Act refers to separate and distinct concepts—a "tax," which would be enacted pursuant to the Commonwealth's revenue-producing power, and a "license fee," which would be enacted pursuant to the Commonwealth's regulatory power. We have repeatedly and consistently affirmed that the intention of the legislature, as expressed in the Sterling Act, was to bar the City of Philadelphia from taxing subjects which were *either* taxed by the Commonwealth *or* subjected to *regulatory licensing* by the Commonwealth. *E.g., Philadelphia Coca-Cola Bottling Co. v. Philadelphia,* 382 Pa. 299, 115 A. 2d 207 (1955); *Honorbilt Prod. Inc. v. Philadelphia,* 380 Pa. 630, 112 A. 2d 108 (1955); *National Biscuit Co. v. Philadelphia,* 374 Pa. 604, 98 A. 2d 182 (1953). The majority acknowledges that the term "license fee" has been explicitly defined, in accordance with this construction of the Sterling Act, as a *regulatory* fee imposed pursuant to the Commonwealth's

---

[3] References herein to the "majority" or "majority opinion" are used for the sake of convenience to refer to the opinion of Mr. Justice COHEN, joined in by Mr. Justice O'BRIEN, although we recognize that it does not in fact represent the majority view of the Court.

police power. *See National Biscuit Co. v. Philadelphia, id.* at 615, 98 A. 2d at 187-88.

The principal issue in the trial of this case was whether the state license fee, although termed in The Drug, Device and Cosmetic Act a "registration fee," was a "true" license fee designed to finance the regulation of the occupation or privilege of manufacturing drugs or was in fact a mere "registration fee" or charge, designed to cover clerical costs involved in issuing a license. If the latter, it would not come within the Sterling Act or prohibit a city assessment. *National Biscuit Co. v. Philadelphia,* 374 Pa. 604, 98 A. 2d 182 (1953). The lower court held, and no one on this Court disagrees, that the license fee was a "true" one, meeting all the conventional tests, including the important one of financing the cost of regulation. On appeal, the city has challenged this holding. It has not, however, suggested that *because* the license was a true one, the city should be allowed its mercantile license tax, but this tour de force is accomplished by the majority opinion.

Citing no Pennsylvania authority, the majority states that, while a "license fee" may be a regulatory police power measure, it may also be a revenue measure enacted pursuant to the State's taxing power. It then holds, overruling all prior decisions on the subject, that it was in this latter sense that the legislature employed the term in the Sterling Act. Thus, according to the majority, "the power of the cities under the Sterling Act is ousted *only when the legislature has enacted a revenue-producing measure* covering the same person, transaction, occupation, activity, privilege, subjects or personal property." (Emphasis supplied)

As has been noted in the majority opinion, our overriding concern must be to discern the intent of the legislature in enacting this measure. As a general proposition, "[t]he object of all interpretation and

construction of laws is to ascertain and effectuate the intention of the Legislature." Statutory Construction Act of May 28, 1937, P. L. 1019, 46 P.S. §551. *See, e.g., Commonwealth v. Emerick,* 373 Pa. 388, 96 A. 2d 370 (1953). In order to make this process more effective and consistent, certain rules of statutory construction have been developed by this Court and by the legislature. The unprecedented interpretation placed upon the Sterling Act by the majority in the instant case is violative of at least four such well-settled rules.

According to the first such rule, words and phrases which have a precise and well-settled meaning in the law of a jurisdiction must be given that meaning when they appear in statutes, unless there is a clear expression of legislative intent to the contrary. *Commonwealth v. 2101 Cooperative, Inc.,* 408 Pa. 24, 183 A. 2d 325 (1962) ; *Commonwealth, Dept. of Public Assistance v. Hicks,* 365 Pa. 153, 74 A. 2d 178 (1950) ; *Ryder Appeal,* 365 Pa. 149, 74 A. 2d 123 (1950) ; *McGinness Unemployment Compensation Case,* 177 Pa. Superior Ct. 104, 110 A. 2d 918( 1955). Although some jurisdictions may have categorized "license fees" in the manner suggested by the majority, Pennsylvania has not. On the contrary, this Court has uniformly held that a "license fee" which is primarily a revenue-producing measure, unrelated to the police power, is not in fact a license; it is a tax. The Court thus phrased the distinction twenty years ago: "A license fee is one exacted for the purpose of regulating an occupation or privilege which is deemed to be in need of public control, and, ordinarily, it is designed for the sole purpose of reimbursing the sovereign, in whole or in part, for the necessary expense of enforcing and administering such control; if it exceeded the amount required for that purpose it would become a tax for revenue and cease to be a valid license fee." *Armour and Co. v. Pittsburgh,* 363 Pa. 109, 112-13, 69 A. 2d 405 (1949).

The rule that a revenue-producing "license fee" is in fact a tax far antedates the Sterling Act. *See Delaware and Atlantic Telegraph and Telephone Company's Petition,* 224 Pa. 55, 73 Atl. 175 (1909); *Point Bridge Company v. Pittsburgh Railways Co.,* 240 Pa. 105, 87 Atl. 614 (1913); and *White's Appeal,* 287 Pa. 259, 134 Atl. 409 (1926).[4]

Whether or not this rule is wise or worthy of retention is not now in issue. The present importance of the issue lies in the light which it sheds on the legislature's intent when the Sterling Act was first passed in 1932. The legislature excluded from city taxation those privileges, transactions, subjects or occupations which are subject to a "State tax or license fee." Since, as noted above, the meaning of "license fee" was already established as denoting a police power measure, and not a tax, there is no reason to suppose that the two terms were meant to be synonymous. The majority construction, however, would make them so by converting the phrase "State tax or license fee" to "State tax or revenue-producing license fee."

The redundancy inherent in the above interpretation is not only a forced construction, but ignores a second well-known rule to the effect that we will not construe a statute so as to render any word or provision meaningless or surplusage, unless no other construction is possible. "[T]he Legislature is presumed not to have intended its laws to contain surplusage."

---

[4] It should be noted that the determination of whether a particular measure is a "tax" or a "license fee" is not simply an exercise in semantics, for the validity of specific enactments will in many cases be dependent upon that determination. For example, a measure which is found to be a tax would be invalid if not supported by some revenue power granted to the political entity which imposes the tax, since a tax cannot be enacted pursuant to that body's police powers, or be imposed under the guise of a police regulation.

*Lynch v. Owen J. Roberts School Dist.,* 430 Pa. 461, 469, 244 A. 2d 1, 5 (1968). *Commonwealth v. Sitkin's Junk Co.,* 412 Pa. 132, 194 A. 2d 199 (1963); Statutory Construction Act of May 28, 1937, P. L. 1019, 46 P.S. §551.

Our conclusion that the term "license fee" as used in the exception clause refers to a fee imposed pursuant to the Commonwealth's police powers is supported by the legislature's express intent "to confer upon cities of the first class the power to levy, assess and collect taxes upon any and all subjects of taxation which the Commonwealth has power to tax but which it does not now *tax or license* . . . ."[5] (Emphasis supplied) The verb "license," here used in contradistinction to the verb "tax," clearly refers to an exercise of the Commonwealth's police powers. This legislative declaration of intent, when read in conjunction with the remainder of the statute, is incompatible with the majority's equation of "license fee" and "revenue-producing license fee." *Cf. Pittsburgh Milk Company v. Pittsburgh,* 360 Pa. 360, 366, 62 A. 2d 49 (1948), construing the identically-worded "Tax Anything Act."[6] Had the legislature intended to refer only to a revenue-producing measure, it could easily have expressed that intention and deleted any reference to license fees. If the interpretation of the majority is to be accepted, then we cannot discern why the Sterling Act refers to licensing *as well as* to taxation by the Commonwealth.

A third rule of statutory construction was discussed in *Pennsylvania Labor Relations Bd. v. Uniontown Hosp. Ass'n.,* 432 Pa. 146, 149-150, 247 A. 2d 621, 623 (1968), where this Court pointed out that after a statute has been consistently interpreted by the Supreme

---

[5] Sterling Act, 53 P.S. §15971(a).

[6] Act of June 25, 1947, P. L. 1145, §1B, as amended, 53 P.S. §6851B. This legislation has subsequently been repealed and reenacted, Act of December 31, 1965, P. L. 1257, §3, 53 P.S. §6903.

Court for several years without contrary legislative action, a presumption arises that this was the interpretation intended by the legislature: "It is well settled that the failure of the legislature, subsequent to a decision of this Court in construction of a statute, to change by legislative action the law as interpreted by this Court creates a presumption that our interpretation was in accord with the legislative intendment." *Accord, e.g., Commonwealth v. Willson Prod., Inc.,* 412 Pa. 78, 87-88, 194 A. 2d 162, 167 (1963); *Loeb Estate,* 400 Pa. 368, 375-76, 162 A. 2d 207, 211-12 (1960); *Krivosh v. Sharon,* 205 Pa. Superior Ct. 498, 501, 211 A. 2d 109, 111 (1965). Since it is to be presumed that our prior construction of the Sterling Act has effectuated the legislative intent, then the majority's present reversal of such a construction cannot be in accord with the purpose of the Act.

A fourth rule of construction also appears to be violated by the majority in this case. The Statutory Construction Act of May 28, 1937, P. L. 1019, 46 P.S. §552, sets certain guides for the courts: "In ascertaining the intention of the Legislature in the enactment of a law, the courts may be guided by the following presumptions among others: . . . (4) That when a court of last resort has construed the language used in a law, the Legislature in subsequent laws on the same subject matter intend the same construction to be placed upon such language."

The Sterling Act was first passed in 1932, and then amended in 1961. See: Act of July 26, 1961, P. L. 904, 53 P.S. §15971. That portion of the Act with which we are presently concerned was reenacted without alteration in 1961, and this was subsequent to our decisions in *Philadelphia Coca-Cola Bottling, Honorbilt* and *National Biscuit, supra.* Accordingly, it must be presumed that the legislature in reenacting the Sterling Act exception thereby adopted this Court's previ-

ous interpretations of "license fee" as meaning a regulatory license fee adopted pursuant to the Commonwealth's police power. *Commonwealth v. Wetzel,* 435 Pa. 468, 257 A. 2d 538 (1969); *Lock Estate,* 431 Pa. 251, 244 A. 2d 677 (1968); *Commonwealth v. Sitkin's Junk Co.,* 412 Pa. 132, 194 A. 2d 199 (1963); *Jones & Laughlin Tax Assessment Case,* 405 Pa. 421, 175 A. 2d 856 (1961); *Parisi v. Philadelphia Zoning Bd. of Adjustment,* 393 Pa. 458, 143 A. 2d 360 (1958). In our view, that presumption is greatly strengthened in the present case by virtue of this Court's previous statements indicating the need for legislative action if the exception contained in the Sterling Act provision was to be made less restrictive.

The majority opinion cites no new reason for ignoring the clear presumption that the Sterling Act is to be interpreted in accordance with our definition of "license fee" in *National Biscuit.* The majority merely points out that, under this interpretation, the Commonwealth's requirement of a license fee may deprive the City of Philadelphia of a large amount of revenue. However, this Court has previously noted that payment of a State tax or license fee may exempt the taxpayer from a larger city tax, and that the Sterling Act may, therefore, in some cases result in reduced payments—in licenses, fees and taxes—to the governmental bodies of the Commonwealth taken as a whole. The Court's conclusion until today has been that "it is for the legislature alone to remove this limitation on the City's power if that body should determine that such action is desirable." *National Biscuit Co. v. Philadelphia,* 374 Pa. 604, 615, 98 A. 2d 182, 187 (1953). Our legislature has presumably decided that such a change would not be desirable. This Court's function is to construe statutes as the legislature has intended them to be construed, rather than in accordance with what we may believe the legislature *should* have intended. We, there-

fore, believe that we may not now properly intervene where the legislature has chosen not to act.

Note should also be taken of the opinion written by Mr. Justice ROBERTS. That opinion accepts the result of the majority, but argues that the purpose of the Sterling Act is to prohibit double taxation, *i.e.,* the imposition of two different taxes upon the same aspect of an enterprise, and that, because the measure of the mercantile license tax (*i.e.,* a percentage of gross sales) and the measure of the registration fee (*i.e.,* a flat fee per plant) differ, the "two taxes fall on entirely different aspects of appellee's business;" and, therefore, imposition of the mercantile license tax and the registration fee does not in fact constitute double taxation. Again, we find ourselves unable to agree with the line of reasoning employed.

The Sterling Act by its terms does not proscribe only "double taxation;" on the contrary, it provides that the City may not tax a "privilege, transaction, subject or occupation" which is subject to a State tax or a State license fee. The present case poses the issue of double taxation only if one accepts the view that the license fee imposed by The Drug, Device and Cosmetic Act is a revenue-producing license fee and not a true regulatory license fee (a view rejected by the majority) and that such a fee is in reality a tax. Thus, a line of reasoning based on the incidence of double taxation necessitates a definition of "license fee," and that, of course, is a question expressly avoided by the concurrence.

That point aside, we are still unable to agree with the position of Mr. Justice ROBERTS and Mr. Justice EAGEN that the mercantile license tax and the registration fee imposed by The Drug, Device and Cosmetic Act do not fall on an identical "privilege, transaction, subject or occupation." The Philadelphia mercantile license tax has repeatedly been held to consti-

tute "an excise tax upon the privilege of transacting business measured by the gross volume of business annually transacted." *National Biscuit Co. v. Philadelphia*, 374 Pa. 604, 613, 98 A. 2d 182, 186 (1953), and cases cited. A true license fee, such as the State fee here in issue, is a "charge which is imposed by the sovereign, in the exercise of its police power, upon a person within its jurisdiction for the privilege of performing certain acts and which has for its purpose the defraying of the expense of the regulation of such acts for the benefit of the general public." *Pennsylvania Liquor Control Bd. v. Publicker Commercial Alcohol Co.*, 347 Pa. 555, 560, 32 A. 2d 914 (1943). Quite simply, we believe that the City mercantile license tax and the State registration fee are both charges levied on the taxpayer's privilege of transacting business, and it is the purpose of the Sterling Act limitation to prevent the collection of two such levies. That one levy is based upon gross sales and the other is calculated on the number of plants maintained by the taxpayer is, in our view, wholly irrelevant to the issue as the legislature has framed it, and we do not read the prior decisions of this Court as suggesting a contrary conclusion.

In conclusion, we believe that the registration fee imposed on the taxpayer by The Drug, Device and Cosmetic Act is a regulatory or "true" license fee and that under the terms of the Sterling Act payment of that fee exempts the taxpayer from the scope of the mercantile license tax of the City of Philadelphia. For the foregoing reasons, we dissent from both the opinion of Mr. Justice Cohen and the opinion of Mr. Justice Roberts.